Robert Somers *vs.* Converged Access, Inc., & another.[1]

Middlesex. May 7, 2009. - August 21, 2009.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Labor,* Wages, Overtime compensation. *Independent Contractor Act. Anti-Discrimination Law,* Age, Prima facie case. *Practice, Civil,* Summary judgment.

In an civil action alleging that an employer had misclassified the plaintiff as an independent contractor rather than as an employee, in violation of G. L. c. 149, § 148B, the trial judge erred in granting summary judgment in favor of the employer on the ground that, even assuming that the allegation was true, the plaintiff had not demonstrated that he had been damaged by the misclassification within the meaning of G. L. c. 149, § 150, given the unrefuted evidence presented by the employer that it paid the plaintiff more as an independent contractor than it would have paid in wages and benefits had he been hired as an employee, where such an interpretation contravened both the plain meaning and the primary purpose of the independent contractor statute and the wage act. [588-594]

In a civil action alleging age discrimination in employment based on the employer's failure to hire the plaintiff on two separate occasions, the trial judge did not err in granting summary judgment in favor of the employer, where the plaintiff failed to establish a prima facie case or to submit admissible evidence that would demonstrate a discriminatory intent, motive, or state of mind necessary to rebut the employer's evidence that the plaintiff, in the employer's judgment, was not considered to be as qualified for the positions as the individuals who were hired. [594-600]

Civil action commenced in the Superior Court Department on May 15, 2006.

The case was heard by *Herman J. Smith, Jr.,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Harold L. Lichten (Shannon Liss-Riordan* with him) for the plaintiff.

---

[1]Per Suneby, chief executive officer and president of Converged Access, Inc. (CAI).

*Karla E. Zarbo*, Assistant Attorney General, for the Commonwealth.

*Christopher R. O'Hara* (*Matthew J. Fogelman* with him) for the defendants.

*Donald Siegel & Nicole Horberg Decter*, for Massachusetts Building Trades Council & another, amici curiae, submitted a brief.

GANTS, J. The plaintiff, Robert Somers, twice applied for full-time employment with Converged Access, Inc. (CAI), but neither application resulted in a job offer. He later agreed to work for CAI on a temporary basis as an "independent contractor." After CAI terminated his contract and did not respond to his third application seeking permanent employment, the plaintiff filed suit in the Superior Court against CAI and its chief executive officer and president, Per Suneby. The plaintiff's amended complaint alleges that he was denied employment because of his age, in violation of G. L. c. 151B, § 4 (count one); misrepresentation (count two); unjust enrichment (count three); and, in count four, that he was misclassified as an independent contractor when, as a matter of law under G. L. c. 149, § 148B (independent contractor statute), he should have been deemed an employee and received the wages and benefits enjoyed by CAI employees to which he was entitled under G. L. c. 149, § 148, as amended through St. 1998, c. 236, § 10 (wage act), and G. L. c. 149, § 150, as amended through St. 2005, c. 99, § 2 (which provides a private civil remedy for "damages incurred" from violations of the independent contractor statute and the wage act). A Superior Court judge granted CAI's motion for summary judgment as to all of the plaintiff's claims. As to count four, the judge concluded that, even assuming that the plaintiff had been misclassified as an independent contractor rather than an employee under § 148B, the plaintiff had not demonstrated that he had been damaged by the misclassification, because CAI had presented unrefuted evidence that he had been paid more as an independent contractor than he would have been paid in wages and benefits had he been hired as an employee.

The plaintiff, now represented by counsel, has appealed from the grant of summary judgment.[2] We transferred this case here

---

[2]The plaintiff also appeals from the denial of his motion to alter or amend

on our own motion to decide whether the "damages incurred" by an individual under § 150 for having been misclassified as an independent contractor rather than an employee, in violation of § 148B, should be measured by subtracting the compensation the plaintiff obtained as an independent contractor from the compensation the plaintiff would have received had he been hired as an employee. We conclude that this measure of damages contravenes both the plain meaning and the primary purpose of the independent contractor statute and the wage act. An employee misclassified as an independent contractor, as a matter of law, *is* an employee; his contract rate is his wage rate; and his "damages incurred" equal the value of wages and benefits he should have received as an employee, but did not. Accordingly, we vacate that part of the judgment that dismisses count four of the plaintiff's amended complaint. For reasons that will be explained, we affirm that part of the judgment that dismisses count one. We affirm with no discussion the judgment as to counts two and three.[3]

*Background.* We summarize the relevant facts in the light most favorable to the plaintiff for purposes of reviewing the allowance of summary judgment. See *Chervin* v. *Travelers Ins. Co.*, 448 Mass. 95, 96 (2006). The plaintiff holds a bachelor of science degree in electrical engineering from the Massachusetts Institute of Technology (MIT). He had performed work under contract for various corporations, including Sitara Networks, as a software developer, network test engineer, and software quality assurance engineer, but had been self-employed since 2002. In July, 2004, Boris Gdalevich, who had been the plaintiff's supervisor at Sitara Networks and then was a manager at CAI, urged the plaintiff to interview for two open permanent full-time positions at CAI: quality assurance engineer and senior quality assurance engineer. The plaintiff was fifty-six years of age at the time. CAI interviewed the plaintiff, but did not hire him for either position. CAI left the

the judgment, filed pursuant to Mass. R. Civ. P. 59 (e), 365 Mass. 827 (1974). The plaintiff's brief, however, contains no separate argument of error in connection with the denial of his motion.

[3]The plaintiff's brief is silent as to his claims of misrepresentation and unjust enrichment, which the judge denied on the ground that they were derived from his wage act violation claim. We will not address in this opinion the merits of any issues that have not been briefed, because we deem them waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

former position unfilled and, on September 20, 2004, hired another applicant, Donald Bispham, for the latter position. Bispham was forty-seven years of age at the time.

In April, 2005, CAI reopened the interview process for the unfilled quality assurance engineer position. The plaintiff applied and was granted an interview for the position, but later that month learned that CAI had decided not to hire him. Gdalevich, who did not interview the plaintiff and did not participate in the employment decision, sent the plaintiff an electronic mail message (e-mail) on April 29, 2005, stating that "they said they just want more in depth experience testing [CAI's Internet protocol application known as VoiceOver IP (VOIP)]." Gdalevich added in the e-mail that he did not think this was a reason. In a subsequent conversation with the plaintiff, Gdalevich suggested that the real reason that the plaintiff was not hired was his age.

After turning down the plaintiff's second application for employment, CAI offered the plaintiff a position to work as a software quality assurance engineer testing software products created by CAI as an "independent contractor."[4] The plaintiff agreed to work for CAI for a sixty-day term commencing on May 18, 2005, and later agreed to an extension for a ninety-day term commencing July 19, 2005. The plaintiff was paid sixty-five dollars per each hour worked. Because CAI deemed him an independent contractor, he was not paid extra for overtime work and received none of the benefits enjoyed by CAI employees: vacation pay, holiday pay, and employer contributions for employee health insurance plans, dental insurance plans, and life insurance plans. Nor was he eligible to join the employees' 401(k) plans and flexible spending account plans, or to receive CAI's regular contributions to those plans. No amount was withheld from his pay for Social Security or Medicare, or for Federal and State income taxes. In addition, CAI did not include him as an employee for purposes of State unemployment insurance or workers' compensation.

The plaintiff performed all of his work for CAI at its main place of business and headquarters in Billerica. CAI provided him with a workspace, a lab bench, and lab equipment, includ-

---

[4]CAI had not hired anyone as an employee at that time to fill the open quality assurance engineer position.

ing three or more computers. Gdalevich supervised, assigned, and controlled all the plaintiff's work, providing him with detailed instruction as to how and when to perform each test and what time to report to work each day. The plaintiff submitted invoices for each hour worked and was paid on an hourly basis only for hours actually worked. The plaintiff worked in excess of forty hours in some weeks but was not paid overtime.

During the time that he worked at CAI, the plaintiff's job performance was praised by Gdalevich. Another manager, Jean DuBois (later a vice-president of CAI), told the plaintiff that his work was excellent. In July, 2005, all the software quality assurance engineers in Gdalevich's department, including the plaintiff, received training on each other's engineering work, so that at any time any engineer in the department could take over for any other engineer in the department.

On August 16, 2005, DuBois informed the plaintiff that CAI was not going to continue to fund his position and that his contract would be terminated in thirty days. DuBois also instructed the plaintiff to work on quality assurance of CAI's converged access point (CAP) product during the remaining thirty days of his contract. On the same day he was given notice of the termination of his contract, the plaintiff checked the CAI Web site for available job openings and saw a posting for a "software quality assurance engineer," the same position for which he had applied in April. The new job posting indicated that the position involved quality assurance testing for CAP and required knowledge of VOIP and the ability to use the VOIP test equipment. The plaintiff applied for this job but received no response, even though he had tested all aspects of the CAP product, received training on VOIP test equipment, and used the VOIP test equipment in the CAI lab during the last thirty days of his contract.

As a result of his not being hired for any of the positions he sought at CAI, the plaintiff, on November 1, 2005, filed a complaint against CAI and Suneby with the Massachusetts Commission Against Discrimination (MCAD) alleging age discrimination.[5] It was not until January, 2006, after CAI had notice of the plaintiff's filing with the MCAD, that CAI decided to

---

[5]The plaintiff's complaint with the Massachusetts Commission Against Discrimination (MCAD) alleged age discrimination only with respect to CAI's failure to hire him in 2005. In removing his administrative claim to the

reinterview, and ultimately hire, George McNamara for the position of software quality assurance engineer. McNamara, who is four years and seven months younger than the plaintiff, had applied for that position in April, 2005, but, like the plaintiff, had not been offered the job.[6] McNamara had initially been eliminated from consideration for this position because he did not know enough VOIP and was weak in computer networking.

The plaintiff, appearing pro se, removed the charges of discrimination from the MCAD and commenced this action on May 15, 2006, asserting his claims of age discrimination, misrepresentation, and unjust enrichment. He subsequently applied for, and received, written authorization from the Attorney General to institute and prosecute in his own name an individual suit for damages under the wage act, as required by G. L. c. 149, § 150, and, with the court's permission, filed an amended complaint, which included his claim for violations of G. L. c. 149. The defendants filed a motion for summary judgment, and as has been stated, the judge determined that the defendants were entitled to judgment in their favor on all of the counts asserted in the plaintiff's amended complaint.

Based on the summary judgment record, the judge found that there was a genuine issue of material fact whether CAI had violated G. L. c. 149, § 148B, in classifying the plaintiff as an "independent contractor" rather than an "employee" as defined under § 148B. The judge, however, reasoned that, even were liability established after a full trial, the defendants had demonstrated (and the plaintiff had failed to rebut the evidence) that he was paid more as an independent contractor than he would have received in wages, benefits, and overtime had he been hired as an employee. The judge stated:

"Assuming [the plaintiff] had been paid at the higher rate

Superior Court, the plaintiff failed to include in his amended complaint the additional age discrimination allegation relating to CAI's failure to hire him in 2004. The judge considered the latter claim to be sufficiently presented in the summary judgment materials and decided it on the merits, because the plaintiff represented himself, citing *Mmoe* v. *Commonwealth*, 393 Mass. 617, 620 (1985), and because the claim had been briefed by both parties.

[6]CAI had extended offers to five other candidates, each of whom had turned down the offer, before making the offer to McNamara. Three of these applicants had been offered the job before the plaintiff was terminated as an independent contractor.

of $92,000 annually if he had been hired as an employee,[7] he was still paid $7,059.76 more for the time he worked as an independent contractor. [The plaintiff] does not contest these figures. While [CAI] failed to account for overtime that might have been paid to [the plaintiff], even account-ing for this does not result in a loss to the plaintiff compared to the higher rate he was paid as an independent contractor. Accounting for unpaid overtime, [the plaintiff's] loss of $1,381.25 falls well below the extra $7,059.76 he made while misclassified."

The judge noted that CAI had "accounted not only for the actual dollars that would have been paid out to [the plaintiff] as an employee, but also the amounts CAI would have spent on [the plaintiff's] behalf for social security, health and dental insurance, vacation pay as well as tax savings to [the plaintiff] based on pretax contributions he would have been able to make as an employee." The judge concluded that, because the plaintiff had suffered no damages under G. L. c. 149, § 150, the defend-ants were entitled to summary judgment in their favor on the plaintiff's claim under G. L. c. 149.

With respect to the plaintiff's claim of unlawful age discrimi-nation, the judge determined that the plaintiff had failed to establish a prima facie case in either alleged instance of discrimi-nation because he had not set forth admissible evidence that either Bispham or McNamara was similarly, or less, qualified than he for the position of software engineer. The judge also concluded that the plaintiff had failed to demonstrate any sub-stantial age difference between the plaintiff (then fifty-seven years of age) and McNamara (then fifty-three years of age). See *Knight* v. *Avon Prods., Inc.,* 438 Mass. 413 (2003).

We now address the merits of this appeal, beginning with the plaintiff's claim under G. L. c. 149, §§ 148, 148B, and 150.

*Discussion.*[8] a. *The claim for lost wages and benefits under the independent contractor statute and wage act.* General Laws

[7]This was the salary paid to George McNamara as a software quality assur-ance engineer.

[8]We acknowledge the amicus briefs filed in support of the plaintiff by the Attorney General, and by the Massachusetts Building Trades Council and Massachusetts AFL-CIO.

c. 149, § 148B, establishes a standard to determine whether an individual performing services for another shall be deemed an employee or an independent contractor for purposes of our wage statutes. Under § 148B (*a*), an individual who performs services shall be considered to be an employee, for purposes of G. L. c. 149 and G. L. c. 151, unless the employer satisfies its burden of proving by a preponderance of the evidence that

> "(1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and
>
> "(2) the service is performed outside the usual course of the business of the employer; and
>
> "(3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed."

G. L. c. 149, § 148B. See *Athol Daily News* v. *Board of Review of the Div. of Employment & Training*, 439 Mass. 171, 175 (2003) (referencing nearly identical language in G. L. c. 151A, § 2). The failure of the employer to prove all three criteria set forth above suffices to establish that the individual in question is an employee. See *id.*; *Silva* v. *Director of the Div. of Employment Sec.*, 398 Mass. 609, 611 (1986). See generally *Epstein* v. *Boston Hous. Auth.*, 317 Mass. 297, 302 (1944), and cases cited.

Individuals who provide services to an employer as an employee (rather than as an independent contractor) fall within the protection of the wage act and G. L. c. 151, § 1A (overtime). The wage act requires employers timely to "pay weekly or bi-weekly each such employee the wages earned by him." G. L. c. 149, § 148. The statute does not define the word "wages" but provides that it includes "any holiday or vacation payments due an employee under an oral or written agreement." *Id.* General Laws c. 149, § 150, authorizes employees claiming to be aggrieved by violations of the independent contractor statute and the wage act (as well as other enumerated statutes not relevant here) to bring a civil action for "injunctive relief and any damages incurred,

including treble damages for any loss of wages and other benefits."[9] See *Wiedmann* v. *Bradford Group, Inc.*, 444 Mass. 698, 709-710 (2005) (treble damages may be awarded in judge's discretion).[10] The statute further provides that "[a]n employee so aggrieved and who prevails in such an action shall be entitled to an award of the costs of the litigation and reasonable attorney fees."

The overtime act requires employers to pay "not less than one and one half times the regular rate at which [the employee] is employed." G. L. c. 151, § 1A. Damages for an employer's violation of the overtime act are recoverable pursuant to G. L. c. 151, § 1B, which, like G. L. c. 149, § 150, permits a private cause of action and an award of treble damages, plus costs and reasonable attorney's fees, to a successful plaintiff.[11]

The defendants do not dispute, for purposes of this appeal, that the plaintiff was an employee of CAI, as defined by the independent contractor statute. Nor do they dispute that the plaintiff did not receive wages and other benefits that he would have received had CAI classified him as an employee rather than an independent contractor. They contend, however, that dismissal of the plaintiff's claim was proper, because the judge correctly concluded that the plaintiff was paid more as an independent contractor than he would have been paid had CAI hired him as an employee, and therefore he suffered no damages. We disagree.

Unless CAI were to prove at trial the three criteria required to establish that the plaintiff was an independent contractor under G. L. c. 149, § 148B, the plaintiff, as a matter of law, *was* an employee of CAI even if he was not hired as an employee.

---

[9]Because the plaintiff is no longer employed by CAI, his only remedy is for damages.

[10]The text of G. L. c. 149, § 150, was amended in 2008 and now provides that "[a]n employee so aggrieved who prevails in such an action *shall* be awarded treble damages, as liquidated damages, for any lost wages and other benefits and shall also be awarded the costs of the litigation and reasonable attorneys' fees" (emphasis added). St. 2008, c. 80, § 5.

[11]The current version of G. L. c. 151, § 1B, as amended through St. 2008, c. 80, § 6, provides that a successful plaintiff "shall be awarded treble damages, as liquidated damages, for lost overtime compensation," while the language in effect at the time this action was commenced provides that such person "may recover" treble damages. G. L. c. 151, § 1B, as amended through St. 1998, c. 236, § 13.

If he was an employee, the plaintiff received an hourly wage of sixty-five dollars per hour during his period of employment, but did not receive the vacation, holiday, or overtime pay to which he was legally entitled,[12] or any employment benefits that were extended to other CAI employees. Regardless of the agreement between the plaintiff and CAI, and regardless of the parties' intentions that his work be performed as an independent contractor, unless CAI successfully satisfies the requirements of G. L. c. 149, § 148B, the plaintiff was CAI's employee. None of the statutory criteria speaks of the employer's intent; rather, all speak of the nature of the service provided. To this extent, § 148B is a strict liability statute, as is the wage act. Good faith or bad, if an employer misclassifies an employee as an independent contractor, the employer must suffer the consequences.

CAI's essential position is that, had it realized that it would be violating §§ 148 and 148B by hiring the plaintiff as an independent contractor, it instead would have hired him as an employee and paid him a lower hourly wage than the hourly rate it paid him as an independent contractor. Because the plaintiff earned more as an independent contractor than he would have earned as an employee, CAI argues that it should owe no damages. This argument is analogous to (and as unpersuasive as) an employer's argument that, despite the clear mandate of G. L. c. 151, § 1A, it should not be obliged to pay its employees one and one-half times the regular rate for overtime work, because, had it realized that it had this obligation, it would have paid its employees a lower base wage. See *Mullally* v. *Waste Mgt. of Mass., Inc.*, 452 Mass. 526, 531-532 (2008). Nor would we be persuaded by a restaurant employer's argument that, despite the provisions of G. L. c. 149, § 152A, it should not be required to pay its wait staff the fee charged customers as a designated service charge because, had it realized that it had this obligation, it would

---

[12]We recognize that G. L. c. 151, § 1A (3), permits exemptions from overtime for those employed "as a bona fide executive, or administrative or professional person or qualified trainee for such position earning more than eighty dollars per week." An employer claiming entitlement to such an exemption has the burden of proof that the exemption applies. See *Goodrow* v. *Lane Bryant, Inc.*, 432 Mass. 165, 170 (2000). The question of the plaintiff's entitlement to overtime pay and, if so entitled, the amount of overtime he worked, must be resolved at trial.

have paid the wait staff a lower hourly wage. See *Cooney* v. *Compass Group Foodservice*, 69 Mass. App. Ct. 632, 638-639 (2007). Cf. *DiFiore* v. *American Airlines, Inc., ante* 486 (2009).

A legislative purpose behind the independent contractor statute is to protect employees from being deprived of the benefits enjoyed by employees through their misclassification as independent contractors. See G. L. c. 149, § 148B (defining when individuals shall be considered employees "[f]or the purpose of" c. 149 and c. 151). Were employers who violated the statute permitted a "safe harbor" that allowed them to demonstrate that they would have paid the employee less had they known he or she was not an independent contractor, there would be no financial incentive to ensure employer compliance, and employees would be left with no meaningful protection from misclassification. See *Mullally* v. *Waste Mgt. of Mass., Inc., supra* at 531 (refusing to interpret overtime statute in manner that would frustrate legislative purpose).

We reject CAI's argument that, without the theory of damages such as employed by the judge, an employee misclassified as an independent contractor would enjoy a "windfall" at the employer's expense, especially considering the statutory remedy of treble damages. Had the Legislature been concerned with this risk, it would not have written the independent contractor statute or the wage act to impose strict liability on employers. Alternatively, it could have included language in § 150 permitting such setoff in the calculation of "damages incurred." See *Cooney* v. *Compass Group Foodservice, supra* (Legislature could have written § 152A to accord greater protection to the "innocent" employer, but "Legislature did not strike the balance that way"). The "windfall" the Legislature appeared most concerned with is the "windfall" that employers enjoy from the misclassification of employees as independent contractors: the avoidance of holiday, vacation, and overtime pay; Social Security and Medicare contributions; unemployment insurance contributions; workers' compensation premiums; and income tax withholding obligations. See 26 U.S.C. § 3102 (2006) (Federal tax withholding); G. L. c. 62B, § 2 (State tax withholding); G. L. c. 151A, § 14 (employee unemployment insurance); G. L. c. 152, § 25A (workers' compensation insurance); 830 Code Mass.

Regs. § 62B.2.1(4)(a)(1) (2005) (employer's payroll tax obligations). Misclassification not only hurts the individual employee; it also imposes significant financial burdens on the Federal government and the Commonwealth in lost tax and insurance revenues. Moreover, it gives an employer who misclassifies employees as independent contractors an unfair competitive advantage over employers who correctly classify their employees and bear the concomitant financial burden.

CAI contends that the judge's theory of damages is consistent with the language of § 150, which delineates defenses available to an employer in an action brought under the wage act. One available defense is "a valid set-off against the [employee's wages]." Although we have never been called to interpret the term "valid set-off" in the context of § 150, we understand the term in the common, ordinary sense to refer to circumstances where there exists a clear and established debt owed to the employer by the employee.[13] Here, there was no evidence of any debt that the plaintiff owed to CAI, and no basis to invoke the "valid set-off" defense.

Finally, CAI contends that the judge's theory of damages is supported by our decision in *Swift* v. *AutoZone, Inc.*, 441 Mass. 443 (2004), which held that a Massachusetts employer may offset or credit a Sunday premium payment it provides to an employee in any week toward overtime pay it provides to that employee for working in excess of forty hours in the same week. That case stands for nothing more than the proposition that the Legislature did not intend the so-called Sunday law, G. L. c. 136, § 6 (50), and the overtime act, G. L. c. 151, § 1A, to provide double overtime payment (essentially, three times one's regular pay rate) to Sunday (or holiday) workers who have already put in a forty-hour work week. See *id.* at 446-447 ("If two statutes require an employer to do the same thing, there is no rule of statutory construction that compels the employer to do so twice"). The *Swift* decision makes clear that employers may credit Sunday premium

---

[13]It has been suggested that employers intending to rely on a "valid set-off" defense to an action for nonpayment of wages, pursuant to G. L. c. 149, § 150, should have a preexisting written policy or agreement signed by the employee. See J.L. Hirsch, Labor and Employment in Massachusetts § 2.7(d) (2d ed. 2008).

payments against overtime payments made for Sunday work; they may not, however, reduce their obligation to make overtime payments based on the argument that, had they known they were obliged to pay overtime, they would have paid the employee a lower wage for the first forty hours worked in a week.[14]

For all the reasons stated above, we conclude that summary judgment should not have been allowed in favor of the defendants on count four of the plaintiff's complaint. At issue at trial will be whether the plaintiff was properly classified as an independent contractor under G. L. c. 149, § 148B. The defendants will bear the burden of proof on this issue, and if they are unsuccessful, the plaintiff will be entitled under G. L. c. 149, § 150, to "damages incurred," including treble damages for "any lost wages and other benefits." The "damages incurred" will include any wages and benefits the plaintiff proves he was denied because of his misclassification as an independent contractor, including the holiday pay, vacation pay, and other benefits that he would have been entitled to as a CAI employee. In addition, if CAI cannot demonstrate that the plaintiff was an exempt employee under the overtime act, G. L. c. 151, § 1A, see note 12, *supra*, the plaintiff will be entitled to the amount he demonstrates that he should have received for overtime based on his hourly wage of sixty-five dollars.[15]

b. *The age discrimination claim.* It is an "unlawful practice

[14]Nor does CAI's argument find support in the Federal cases, cited in its brief, decided under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. (2000). See *Lupien* v. *Marlborough*, 387 F.3d 83 (1st Cir. 2004); *Roman* v. *Maietta Constr., Inc.*, 147 F.3d 71 (1st Cir. 1998); *D'Camera* v. *District of Columbia*, 722 F. Supp. 799 (D.D.C. 1989). In these cases, Federal courts allowed employers who had provided compensatory time to employees who were entitled to overtime pay to credit the compensatory time against the amount due in overtime. Had CAI specified in its independent contractor agreement with the plaintiff that it would pay him an additional sum of money for work in excess of forty hours per week, or a separate stipend in lieu of health benefits, then CAI arguably would be able to credit these payments against any amount due for unpaid overtime or employee health benefits under G. L. c. 149, § 150. CAI's agreement with the plaintiff, however, identified no such separate payments. Having failed to do so, CAI may simply credit the sixty-five dollars per hour that he was paid against the wages that were due him as an employee, leaving CAI liable only for holiday, vacation, and, perhaps, overtime pay, and any benefits the plaintiff was entitled to as an employee.

[15]We reject CAI's contention that the plaintiff has waived any claim of his entitlement to overtime pay. The plaintiff did not plead in his amended complaint

. . . [f]or an employer . . . because of the age of any individual, to refuse to hire or employ . . . such individual . . . unless based upon a bona fide occupational qualification." G. L. c. 151B, § 4 (1B). We have said that, in evaluating a motion for summary judgment on an age discrimination claim, the three-stage order of proof set forth by the United States Supreme Court in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973), provides a "useful framework." *Knight* v. *Avon Prods., Inc.*, 438 Mass. 413, 420 n.4 (2003). The judge applied this familiar framework to his summary judgment analysis.

In the first stage, the plaintiff has the burden of proving, by a preponderance of the evidence, a prima facie case of age discrimination. *Id.* When, as here, a plaintiff alleges that he was denied a job because of his age, the elements of the prima facie case are fivefold: (1) the plaintiff was a member of the class protected by G. L. c. 151B, that is, over forty years of age; (2) he was qualified for the job; (3) despite his qualifications, he was not hired for the job; (4) a person with similar or inferior qualifications was hired; and (5) the person hired was at least five years younger than the plaintiff. See *id.* at 420-421, 425; *DiBenedetto* v. *Commonwealth*, 398 Mass. 395, 398 (1986). These five elements, if proved by a preponderance of evidence, establish a reasonable inference of discriminatory animus and causation that, unless rebutted by the employer during the second stage of the framework, are sufficient to allow a jury to find that the plaintiff was a victim of age discrimination. See *Knight* v. *Avon Prods., Inc.*, *supra* at 425.

The judge determined that the plaintiff failed to establish a prima facie case of age discrimination with respect to CAI's failure to hire him in either 2004 or 2005. In both instances, the judge concluded, the plaintiff had not demonstrated that the

a violation of the overtime act, G. L. c. 151, §§ 1A, 1B, but he did assert his statutory entitlement to overtime pay in his opposition to CAI's motion for summary judgment, and CAI responded to that assertion in its reply to the plaintiff's opposition. The judge in his memorandum and order allowing the defendants' motion for summary judgment expressed his understanding that the plaintiff (who appeared pro se) sought "damages for failure to provide employee benefits and for failure to pay overtime and holiday rates." We conclude that any objection that CAI now raises to the plaintiff's failure to claim damages for overtime in a timely manner has been waived. See *Freyermuth* v. *Lutfy*, 376 Mass. 612, 616-617 (1978).

individual hired in his place was similarly, or less, qualified than he for the position of software quality engineer.

With respect to CAI's decision not to hire the plaintiff in 2004, there is no evidence in the summary judgment record that supports an inference that the plaintiff was as qualified as Donald Bispham for the position of senior quality assurance engineer. The plaintiff suggests that he was as or more qualified than Bispham because he obtained a bachelor of science degree from MIT, while Bispham obtained an associate of science degree from the Franklin Institute of Boston. This alone is insufficient to establish that the plaintiff was more or equally qualified for the job, especially when many years had passed since their graduation and each had substantial work experience in software engineering. Moreover, passing over the plaintiff's failure to establish a prima facie case, CAI articulated a legitimate and nondiscriminatory reason for choosing Bispham over the plaintiff: Bispham had a stronger networking background, as well as specific experience in troubleshooting networks, routing protocols, security, and multiple network access methods, and network "debug" skills that the plaintiff did not have. The plaintiff failed to offer any evidence to rebut this nondiscriminatory reason and show it was pretext, apart from pointing to his resume and claiming that he had similar experience. No reasonable fact finder, on this evidence in the summary judgment record, could find by a preponderance of the evidence that CAI did not hire the plaintiff in 2004 because of his age. See *LaLonde* v. *Eissner*, 405 Mass. 207, 209 (1989) (party opposing summary judgment "cannot rest on . . . mere assertions of disputed facts").

As to CAI's decision not to hire the plaintiff in 2005, the judge concluded that, apart from the plaintiff's failure to demonstrate that he was as qualified as McNamara, the plaintiff could not show that McNamara was more than five years younger than the plaintiff. See *Knight* v. *Avon Prods., Inc., supra* at 425. We agree with the plaintiff that, in some circumstances, an inference of age discrimination may be established despite the fact that the individual hired in the plaintiff's place was less than five years younger than the plaintiff. See *id.* (cautioning that bright-line standard "should not be used to exclude a plaintiff who might otherwise have evidence showing that age was a

factor"). We do not find such circumstances here. The plaintiff contends that CAI employed no one in his age range. He bases this contention, however, solely on his observation of the physical appearance of others working in CAI's offices. CAI has produced evidence, which stands undisputed, that in April, 2005, when the plaintiff failed to obtain a permanent position with CAI, of a total of thirty-seven CAI employees, twenty-nine were over forty years of age, of which eleven were over fifty years of age.

The plaintiff also relies on statements made to him by Gdalevich, both orally and by e-mail, that Gdalevich believed the real reason the plaintiff was not hired for the permanent position was his age. There are at least two reasons why Gdalevich's statements bear no inferential weight. First, there is no evidence that Gdalevich participated in the hiring decision, and the plaintiff admitted in deposition testimony that Gdalevich was simply speculating as to the reason the plaintiff was not hired. His speculation, if offered for its truth, would not be admissible in evidence at trial and therefore may not be considered on summary judgment. See Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974). Second, even had Gdalevich offered his opinion at a deposition or in an affidavit made part of the summary judgment record as to the reason why the plaintiff was not hired (which he did not), his statement would not be admissible in evidence as an admission of a party opponent to prove bias and unlawful motive because Gdalevich did not participate in the hiring decision or have managerial responsibility over those who did. See *Northeast Metro. Regional Vocational Sch. Comm.* v. *Massachusetts Comm'n Against Discrimination,* 31 Mass. App. Ct. 84, 87 (1991), citing *Shoppers' World, Inc.* v. *Assessors of Framingham,* 348 Mass. 366, 371-372 (1965). "Stray remarks in the workplace, statements by people without the power to make employment decisions, and statements made by decision makers unrelated to the decisional process itself do not suffice to satisfy the plaintiff's threshold burden in these cases." *Wynn & Wynn, P.C.* v. *Massachusetts Comm'n Against Discrimination,* 431 Mass. 655, 667 (2000). See Mass. G. Evid. § 801(d)(2)(C), (D) (2008-2009).

The plaintiff also argues that, because CAI did not hire McNamara for the open position of software quality assurance engineer until after the plaintiff had filed his age discrimination

complaint with the MCAD, it is reasonable to infer that CAI hired McNamara to mask its earlier discriminatory conduct toward the plaintiff and defeat his age discrimination claim. We agree with the plaintiff that, if an employer refuses to hire an individual because of his age, the employer would be liable for age discrimination even if it later hired someone similar in age after receiving notice that an MCAD complaint had been, or was going to be, filed. The plaintiff requests, essentially, that his claim of discrimination in these circumstances be evaluated as of the date he filed his original complaint with the MCAD. Doing so, however, does not strengthen his age discrimination claim because, as of that date, CAI had not hired anyone to fill the position, and therefore the plaintiff could still not satisfy the elements of the prima facie case.[16] Nor has the plaintiff presented other evidence that, apart from a prima facie case, would provide a jury with a "logical basis" to find that CAI would have hired the plaintiff had he been younger. See *Knight* v. *Avon Prods., Inc., supra* at 425-426. See also *Sullivan* v. *Liberty Mut. Ins. Co.,* 444 Mass. 34, 41-46 (2005) (identifying alternate means by which inference of discrimination in layoffs may be established in lieu of prima facie case). We also observe that there is no evidence that the filing of the plaintiff's MCAD complaint had any bearing on CAI's decision to hire McNamara.

Even had the plaintiff established a prima facie case of age discrimination under the *McDonnell Douglas* framework, CAI has articulated "a lawful reason or reasons for its employment decision [and] produc[ed] credible evidence to show that the reason or reasons advanced [are] the real reasons" that it did not hire the plaintiff in 2005. *Abramian* v. *President & Fellows of Harvard College,* 432 Mass. 107, 116 (2000), quoting *Blare* v. *Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437, 442 (1995). CAI contends that it hired McNamara over the plaintiff because McNamara's background in "voice-centric" products, together with his professional experience, made him more qualified for the job. CAI has produced ample evidence that, on or about August, 2005, it decided to focus on CAP, a

---

[16]The record reflects that others had been offered this position and turned it down as of November 1, 2005, the date on which the plaintiff had filed his complaint with the MCAD, but the record does not reflect the ages of those given such offers.

new product that required VOIP experience. Although the plaintiff worked on quality assurance of the CAP product during the last thirty days of his contract, most of the work he performed did not require VOIP experience. CAI had hired DuBois in June, 2005, to be senior vice-president of engineering. DuBois, who was involved in the hiring process at the time that McNamara was reinterviewed, was impressed with his professional experience with voice-centric products and felt his experience would fit with the open position. CAI offered to hire McNamara in January, 2006, less than six months after the plaintiff received notice of his contract termination.

The burden then returns to the plaintiff to rebut CAI's proffered reason with evidence that it is a mere pretext and that the true reason that the plaintiff was not hired was discriminatory animus. See *Sullivan* v. *Liberty Mut. Ins. Co., supra* at 54-55. The only admissible evidence submitted by the plaintiff that carries some weight in rebutting CAI's assessment of McNamara's qualifications shows that McNamara was not hired for the position of software quality engineer in May, 2005, because CAI felt at that time he did not have enough VOIP experience. CAI offered this position to two other candidates in May, 2005, and three more candidates in intervening months, before finally offering the position to McNamara in January, 2006. The plaintiff admitted, however, that McNamara had more VOIP experience than he, and admitted as well that McNamara had been working with VOIP longer professionally. These admissions support, rather than rebut, CAI's legitimate explanation of why McNamara eventually was hired over the plaintiff.

Because an employer's intent is "elusive and rarely is established by other than circumstantial evidence," *Blare* v. *Husky Injection Molding Sys. Boston, Inc., supra* at 439, citing *Wheelock College* v. *Massachusetts Comm'n Against Discrimination,* 371 Mass. 130, 137 (1976), and because our summary judgment review requires that we consider all facts in the light most favorable to the plaintiff, we tend to disfavor summary judgment in employment discrimination cases. See, e.g., *Sullivan* v. *Liberty Mut. Ins. Co., supra* at 39. A plaintiff alleging age discrimination, however, cannot survive a motion for summary judgment simply by asserting that he was qualified for an employment position but

that someone younger was hired in his place. See *id.* at 54-55, 57; *Wynn & Wynn, P.C.* v. *Massachusetts Comm'n Against Discrimination*, 431 Mass. 655, 664-666 (2000), and cases cited. Like any party opposing summary judgment, a plaintiff asserting discrimination must demonstrate a "reasonable expectation of proving an essential element of the case at trial." *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 127 (1997). Here, the plaintiff failed both to establish a prima facie case or to submit admissible evidence that would demonstrate a discriminatory intent, motive, or state of mind necessary to rebut CAI's evidence that the plaintiff, in CAI's judgment, was not considered to be as qualified for the positions as the individuals who were hired. The judge properly granted summary judgment as to the age discrimination claim.

*Conclusion.* We vacate that part of the judgment dismissing count four of the plaintiff's amended complaint and affirm that part of the judgment dismissing the remaining counts. The case is remanded to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*