Lauriat, Peter M., J.
The plaintiff, Sandra Pierson, was employed as a teacher in the Boston Public Schools for over thirty years. From September 1998 until her employment was terminated in June 2006, Pierson was assigned to the John D. O’Bryant School of Mathematics and Science (“the O’Biyant School”). Pierson brought the present action against her former employer and the headmaster of the O’Bryant School, Joel Stembridge (“Stembridge”), alleging claims of age discrimination (Counts 1 and 2), race discrimination (Count 3), disability discrimination (Count 4), and unlawful retaliation (Count 5) in violation of G.L.c. 151B. In addition, Pierson has asserted a claim against Stembridge of malicious interference with her employment (Count 6). The defendants have now moved for summary judgment on all of Pierson’s claims. For the reasons set forth below, the defendants’ motion is allowed.
BACKGROUND
Sandra Pierson began teaching at the O’Bryant School in September 1998. From the start of her employment there, Pierson experienced significant difficulties in arriving at work on time. She was tardy forty-five times during the 1998-1999 school year, forty-nine times during the 1999-2000 school year, and 104 times during the 2000-2001 school year. These absences prompted the then-headmaster of the O’Bryant School, Gustave An-glin, to issue Pierson a number of written warnings.
Stembridge assumed the position of headmaster of the O’Bryant School in July 2004. On October 14, 2004, Stembridge issued Pierson a written warning regarding her chronic tardiness. Despite this written warning, Pierson’s lack of punctuality continued to present a problem. On November 4, 2004, Stembridge issued her a written reprimand, stressed the importance of arriving to school on time, and cautioned her that additional incidents of lateness may result in further disciplinary action.
The following day, Stembridge observed that Pierson arrived to class three minutes past the tardy bell. The students in the classroom were therefore left unsupervised. Stembridge raised his concerns to Pierson in a memorandum dated November 5, 2004, and notified her that she would be formally evaluated during that school year. When Pierson continued to arrive to school late, Stembridge directed her to attend a disciplinary hearing. To resolve the matter, Pierson entered into a settlement agreement with the Boston Public Schools and the Boston Teachers Union on January 20, 2005, under which she agreed to a two-day suspension without pay as punishment for her tardiness.
Pierson was tardy an additional six times in the month following her suspension, thereby prompting an additional investigatory meeting. A formal disciplinary hearing was held on June 10, 2005. The hearing officer took documentary and testimonial evidence and made findings of fact. Among the documents presented at the hearing was a two-page statement from Pierson, dated June 9, 2005, in which she emphasized her efforts and accomplishments as *275 a teacher. Pierson also explained that she was experiencing stress, both at work and in her personal life. She requested that “reasonable accommodation” be made for her on account of her stress and in consideration of her past achievements, and she asked that no further disciplinary action be taken against her.
The hearing officer concluded that Pierson’s tardiness violated Boston School Department policy and constituted conduct unbecoming a teacher. As a punishment, the hearing officer recommended a fifteen-day suspension without pay. The superintendent adopted the hearing officer’s recommended penally and notified Pierson that the suspension was to be served in September.
After the formal disciplinary hearing, Pierson again arrived late to work on several days in June 2005. In lieu of a disciplinary hearing, Pierson entered into a second settlement agreement, dated November 18, 2005, which imposed a tweniy-day suspension without pay, to be served in March and April of 2006. In addition, the agreement provided that “Ms. Pierson acknowledges and understands that this Agreement constitutes a FINAL WARNING. In the event of any future unexcused tardiness by Ms. Pierson, Poston Public Schools] may move to terminate Ms. Pierson's employment.”
In accordance with his November 5,2004, memorandum, Stembridge conducted an interim performance evaluation of Pierson in June 2005. The evaluation was based on an unannounced visit to one of Pierson’s classes. With respect to her teaching skills, Stembridge noted that Pierson failed to effectively monitor the students’ behavior, had low expectations for her students, did not utilize class time in an efficient manner, and failed to explain clearly the learning objectives for the class. He acknowledged that Pierson had strong knowledge of the subject area, but found that she failed to promote “higher order thinking skills.” Overall, Stembridge determined that Pierson’s performance did not meet the standards of the Boston Public Schools.
During the following school year, Pierson received three more unsatisfactory interim performance evaluations. Stembridge prepared two of those evaluations together with the science department head, Dr. Bonnie Arons-Polan. The third evaluation was conducted by Arons-Polan alone. The evaluations were based on in-class observations of Pierson’s teaching and classroom activities. Each evaluation identified areas of concern and made suggestions for improvement. The evaluations noted several deficiencies in Pierson’s teaching, including her failure to engage the students in active learning, to discipline students for arriving late to class and for other disruptive behavior, to communicate effectively the class learning objectives, to promote higher learning, and to demonstrate high expectations for her students. Each of the evaluations concluded that Pierson’s overall performance was unsatisfactory.
Under the Boston Teachers Union’s collective bargaining agreement with the Boston School Committee in effect at the time, the headmaster could initiate termination of a teacher with at least four unsatisfactory interim evaluations by recommending to the superintendent that the teacher be terminated. On March 24, 2006, Stembridge requested the superintendent’s approval to terminate Pierson. The superintendent approved the request the following day.
By letter dated March 28, 2006, Stembridge officially notified Pierson of his decision to terminate her employment. The decision to terminate Pierson was not due to her tardiness and, in fact, Pierson had been tardy on only one occasion during the 2005-2006 school year. Rather, Stembridge’s stated reasons for dismissing Pierson were her “inefficiency, incapacity, incompetency, and [her] failure to satisfy teaching performance standards.” Stembridge identified specific “areas of deficiency,” including “knowledge of subject matter, currency in the curriculum and knowledge of child development, setting the stage for learning, classroom management, effective teaching, monitoring, assessment and follow-up, promotion of high standards and expectations for student achievement, professional responsibility outside the classroom, collaboration with colleagues and school responsibilities.”
On or about May 1, 2006, Pierson took a medical leave of absence due to depression. By letter dated May 8, 2006, Pierson contacted the Boston Public School’s Office of Equity, indicating that she had voluntarily identified herself as a handicapped employee with a disability. She identified her disability as “[a]cute depression and anxiety,” which was “exacerbated by stress.” She indicated that her disability made it difficult for her to get to work in a timely manner, and that she had trouble working in a room without windows. Pierson also submitted letters from several treating physicians indicating that she had been diagnosed as having severe depression, chronic anxiety, and stress. One of the physicians explicitly stated that a disability accommodation may be necessary, although the doctor did not elaborate as to what such an accommodation might entail. Another physician recommended reconsideration of the decision to terminate Pierson, stating that it could exacerbate her depression. As reasonable accommodations, Pierson proposed a decreased work load of no more than two different courses, being granted “flex time” for her expected arrival and departure from school, and placement in a room with windows. The defendants did not grant Pierson her requested accommodations.
In a supplemental letter to the Office of Equity dated June 9, 2006, Pierson indicated that she believed the school had engaged in age discrimination. She based this belief on the fact that she had been assigned three different courses (requiring three different preparations), whereas some younger teachers at the school had been assigned only one or two courses. For example, during the 2005-2006 school year, Pierson was assigned to two Biology II classes, one Marine Biology class, and two Health classes. In contrast, Arthur *276 Johnson, who is ten years younger than Pierson, was assigned to five Biology I classes.
Following additional termination proceedings, Stembridge notified Pierson that he had made a final determination to terminate her employment effective June 12, 2006. She was sixty years old at the time of her termination, and was approximately one year and three months shy of being eligible for full retirement benefits. According to Stembridge, Pierson was terminated due to her poor performance as a teacher, not because of her persistent tardiness. At his deposition, Stembridge indicated that Pierson had low energy and low expectations of her students.
To refute Stembridge’s characterization of her teaching capabilities, Pierson submitted a host of letters of recommendation from colleagues, administrative heads, and others attesting to her strong teaching skills and leadership. She also provided two letters from the coordinator of a high school outreach program conducted through the University of Vermont, dated June 8 and 9, 2005, announcing that Pierson and two of her students won a competition in connection with a collaborative research project at the university. On June 30, 2005, Pierson received a “Certificate of Excellence” for completing thirty hours of professional development activities during 2004-2005, and in January 2006 Pierson was nominated to be honored in the 10th edition of the publication “Who’s Who Among America’s Teachers.”
After Pierson was discharged, the courses she formerly taught were assigned to three other teachers at the O’Bryant School, Mattie Shields, Arthur Johnson, and Gertrude Fisher, each of whom are African-American. Two of those teachers, Johnson and Fisher, are substantially younger than Pierson.
In September 2006, Pierson filed charges of discrimination and retaliation with the Massachusetts Commission Against Discrimination (“MCAD”). The MCAD determined that there was insufficient evidence to support the allegations and dismissed the complaint. Pier-son then brought the present action in this court.
DISCUSSION
Summary judgment is appropriate when there is “no genuine issue as to any material fact and... the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). The moving party bears the initial burden of affirmatively demonstrating that there is no genuine issue of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The moving party may satisfy this burden by showing that there is an absence of evidence to support the opposing party’s case or by submitting affidavits or other materials referenced in Mass.R.Civ.P. 56(c) that demonstrate the opposing party has “no reasonable expectation of proving an essential element of that party’s case” at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711, 716 (1991). Once the moving party has shown that there is no genuine issue of material fact, the burden shifts to the party opposing the motion to respond and allege specific facts that establish the existence of a genuine triable issue. Pederson, 404 Mass. at 17.
I. Discrimination
The court applies a three-stage order of proof in assessing a plaintiffs claim of employment discrimination. Somers v. Converged Access, Inc., 454 Mass. 582, 595 (2009). “In the first stage, the employee has the burden to establish a primafacie case of discrimination by showing that (1) [she] is a member of a class protected by G.L.c. 15IB; (2) [she] performed [her] job at an acceptable level; (3) [she] was terminated; and (4) [her] employer sought to fill the plaintiffs position by hiring another individual with qualifications similar to the plaintiffs . . .” Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 116 (2000). These elements may vary depending on the facts of the case and the type of discrimination alleged. Id.
In the second stage, the employer may rebut the plaintiffs assertion of discrimination by “articulating ‘a lawful reason or reasons for its employment decision [and] produc[ing] credible evidence to show that the reason or reasons advanced were the real reasons.’ ” Id., quoting Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 442 (1995). At the third stage, the burden shifts back to the employee to demonstrate that the reason advanced by the employer was “amere pretext and that the true reason [for the employer’s action] was discriminatory animus.” Somers, 454 Mass. at 599.
A. Age and Race Discrimination
General Laws c. 151B, §1C, prohibits “the commonwealth or any of its political subdivisions . . . because of the age of any individual, to . . . discharge from employment such individual . . .’’To qualify for protection under this statute, the employee must be over forty years old. G.L.c. 151B, §1(8) (defining “age” as “any duration of time since an individual’s birth of greater than forty years”); Somers, 454 Mass. at 595.
Pierson has met her initial burden of establishing a primafacie case of age discrimination. She was well over forty years old at the time of her discharge, and therefore falls within the protected class of persons under G.L.c. 15IB, §1C. Although the defendants dispute Pierson’s job performance, she has presented at least some evidence suggesting that she was performing successfully as a teacher and had been praised by her students and colleagues. See Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 40 (2005) (plaintiffs initial burden is “simply [to] produce sufficient evidence that [her employer’s] actions, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors”). After she was terminated, at least two of the teachers that assumed Pierson’s duties were substantially younger than Pierson. See Koster v. Trans World Airlines, Inc., 181 F.3d 24, 31 (1st Cir. 1999) (plaintiff established primafacie case where his duties were subsumed by younger employees).
*277 Turning to stage two, the defendants have proffered a legitimate, nondiscriminatoiy reason for Pierson’s discharge. Based on four separate visits to her classroom, Stembridge and Arons-Polan completed four comprehensive performance evaluations in which they concluded that Pierson’s overall performance was inadequate. The evaluations noted both positive aspects of Pierson’s teaching as well as deficiencies, and set forth in some detail the basis for the evaluators’ conclusions. In addition, the negative evaluations were completed during a time when Pierson’s job performance was already placed in question due to her persistent tardiness.
At the third and final stage, the plaintiff must demonstrate that the defendants’ stated reason for her termination was pretextual, or that the decision was motivated by a discriminatory animus. The court concludes that she has failed to make the requisite showing. There is no evidence, for example, that younger teachers with similarly poor performance reviews were not terminated, or that the factual bases for the negative reviews of Pierson were incorrect. Cf. Abramian, 432 Mass. at 114 (similarly situated employees punished less severely); Dragonas v. School Comm. of Melrose, 64 Mass.App.Ct. 429, 444 (2005) (summary judgment inappropriate where facts underlying performance evaluations are in dispute); Holland v. BLH Elecs., Inc., 58 Mass.App.Ct. 678, 682-84 (2003) (plaintiff presented evidence that refuted factual basis for discharge and demonstrated disparate treatment of employees). Nor is there any evidence that Stembridge or anyone else at the school had made discriminatory remarks, or that other older teachers at the school had been subject to discriminatory treatment.[1] Cf. Abramian, 432 Mass. at 111-12, 114 (derogatory references to employee’s national origin); Brownlie v. Kanzaki Specialty Papers, Inc., 44 Mass.App.Ct. 408, 414 (1998) (employer stated, “I want a younger man,” and questioned when older employee would retire). The fact that some of Pierson’s colleagues and students expressed admiration for her teaching, while commendable, is insufficient to support an inference that the defendants’ stated reason for terminating her was a pretext for discrimination. See, e.g., Batchelder v. Andover Police Dept., 71 Mass.App.Ct. 1120, 2008 WL 1759104, at *3 (2008) (conflicting evidence regarding plaintiffs job performance held insufficient to prove pretext); Wooster v. Abdow Corp., 46 Mass.App.Ct. 665, 669-70, 673 (1999) (favorable evaluations of plaintiff and letter of reference did not demonstrate that discharge due to poor performance was a pretext). “The employer’s reasons need not be wise, so long as they are not discriminatory and they are not a pretext.” Bruce v. Town of Wellesley, 47 Mass.App.Ct. 800, 806 (1999), quoting Tardanico v. Aetna Life & Cas. Co., 41 Mass.App.Ct. 443, 448 (1996). In short, Pierson has failed to establish any connection between her age and the defendants’ actions.
Pierson’s race discrimination claim likewise fails because there is no evidence that the defendants’ conduct was motivated by race.[2] This is particularly true given that Pierson and Stembridge are of the same race (Caucasian). Summary judgment must therefore enter in favor of the defendants on Pierson’s age and race discrimination claims.
B. Disability Discrimination
It is an “unlawful practice” for an employer “to dismiss from employment... or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer’s business.” G.L.c. 151B, §4(16). Pursuant to G.L.c. 151B, §1(16), a “qualified handicapped person” is defined as “a handicapped person who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap.”[3] Where, as here, the plaintiffs handicap discrimination claim is based on her employer’s alleged failure to provide a reasonable accommodation, the plaintiff must establish that she “was a ‘qualified handicapped person’ capable of performing the essential functions of [her] job with reasonable accommodation; [she] requested such accommodation, and [her employer] refused to provide it; and, as a result of this refusal, [she] suffered some harm.” Smith v. Bell Atl., 63 Mass.App.Ct. 702, 711 (2005), quoting Alba v. Raytheon Co., 441 Mass. 836, 843 n.9 (2004).
In this case, Pierson’s initial requests for a reasonable accommodation were raised in response to disciplinary actions taken against her due to chronic tardiness. In May 2006, after she had received notice of her termination, Pierson specifically requested “flex time” for her arrival and departure from school, assignment to no more than two different courses, and placement in a room with windows as accommodations for her anxiety and depression.
“The requirement to provide a reasonable accommodation does not require an employer to engage in . . . fundamental job restructuring,” Tompson v. Department of Mental Health, 76 Mass.App.Ct. 586, 596 (2010), or “to disregard or waive an employee’s inability to perform an essential function of the job,” Cox v. New England Tel. & Tel. Co., 414 Mass. 375, 383 (1993). In at least two cases, this court has recognized that “a regular and reliable level of attendance is a necessary element of most jobs.” Beane v. Massachusetts Container Corp., 18 Mass. L. Rptr. 388, 2004 WL 2550470, at *4 (Mass.Super.Ct. 2004), quoting Picot v. New England Tel. & Tel. Co., 3 Mass. L. Rptr. 80 (Mass.Super.Ct. 1994). In this regard, a school teacher’s prompt and reliable attendance at school is essential to the time-sensitive nature of class scheduling. Students depend on their teachers to conduct the daily lesson as scheduled, and to be available *278 to answer questions during school hours. It would be unreasonable to compel the school to depart from its rigid class schedule in order to accommodate the needs of specific teachers, and the defendants therefore did not run afoul of G.L.c. 15 IB by failing to grant Pierson “flex time” for her arrival and departure from school. See Tompson, 76 Mass.App.Ct. at 595 (holding that four-hour limitation on plaintiffs work day did not constitute a reasonable accommodation because her position required her to supervise a full eight-hour shift of workers).
Moreover, Pierson did not notify the defendants of her alleged handicap, or of her specific accommodation requests, until after Stembridge had sent her notice of his decision to terminate her employment.[4] See Russell v. Cooley Dickenson Hosp., Inc., 437 Mass. 443, 457 (2002), quoting Taylor v. Principal Fin. Group, Inc., 93 F.3d 155, 165 (5th Cir. 1996) (“[I]t is the employee’s initial request for an accommodation which triggers the employer’s obligation to participate in the interactive process of determining one”); see also MCAD Guidelines VILA (“The employer’s duty to provide reasonable accommodation is triggered if an employee identifies him/herself as a qualified handicapped person and requests a reasonable accommodation”). At that point, Pierson’s discharge was imminent; the defendants had no obligation to recant their decision to discharge Pierson for poor performance in order to test whether her work would improve upon modifying her course load and placing her in a more attractive classroom. See Cox, 414 Mass. at 383 (employer is not required to disregard employee’s inability to perform essential job functions). Furthermore, Pierson did not suffer any harm as a result of the defendants’ failure to grant her an accommodation because Stembridge had already made the decision to terminate her employment and had gained the superintendent’s approval to do so.[5] The defendants are therefore entitled to summary judgment on Pierson’s disability discrimination claim.
II. Retaliation
General Laws c. 151B, §4(4), makes it unlawful for an employer “to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under [G.L.c. 151B, §5].” To recover on a claim of retaliation, Pierson must “show that [she] engaged in protected conduct, that [she] suffered some adverse action, and that ‘a causal connection existed between the protected conduct and the adverse action.’ ” Mole v. University of Massachusetts, 442 Mass. 582, 591-92 (2004), quoting Mesnick v. General Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991).
In the present case, Pierson was terminated before she filed a charge of discrimination with the MCAD. Although she had earlier complained of age discrimination to the Office of Equity, and had requested various accommodations on account of her depression, Pierson had already received notification of her termination at that time. See Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16-17 (1st Cir. 1997) (rejecting retaliation claim where employee received final warning concerning job performance before he requested reasonable accommodation for depressive disorder). Accordingly, Pierson has failed to establish a causal connection between her complaint of discrimination and the termination of her employment.
III. Malicious Interference with Employment
Pierson’s malicious interference claim is based on Stembridge’s alleged discriminatory conduct. The court’s dismissal of Pierson’s discrimination claims therefore disposes of her malicious interference claim as well. Brunner v. Stone & Webster Eng’g Corp., 413 Mass. 698, 705 (1992); Romero v. UHS of Westwood Pembroke, Inc., 72 Mass.App.Ct. 539, 548 (2008).
ORDER
For the foregoing reasons, the Defendants Joel Stembridge and City of Boston/Boston Public Schools’ Motion for Summaiy Judgment is ALLOWED.

 Pierson alleged that Stembridge harassed several other older teachers and tried to force them into retirement. This allegation is insufficient to create a genuine triable issue because she has not provided a basis for this allegation or adduced any evidence regarding specific instances of harassment.

 As evidence of discrimination, Pierson asserts that an African-American employee, Violet Britton, was not disciplined for being tardy on forty-one occasions during the 2004-2005 school year. In support of her argument, she submitted a portion of the attendance records of the O’Bryant School for the period in question. The records submitted reveal that Britton was tardy a total of fourteen or fifteen times, not forty-one. In contrast, Pierson's perpetual tardiness spanned a period of years, peaking at 104 days tardy during the 2000-2001 school year, and persisted despite written warnings and suspensions. The two employees therefore stand on much different footing, and there can be no meaningful comparison between their relative treatment.

 The term “handicap” is defined as “(a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment.” G.L.c. 151B, §1(17). “Major life activities” include, without limitation, “caring for one’s self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.” Id. §1(20).

 Pierson’s June 2005 written statement did not constitute an accommodation request for purposes of G.L.c. 151B. Although she used the phrase “reasonable accommodation,” she did not indicate that she had any specific handicap or disability. She mentioned only that she was experiencing stress. It would be unreasonable to expect the defendants to surmise from this statement that Pierson was handicapped as a result of stress.

 Sphere is no evidence that the defendants’ decision to terminate Pierson was based on her asserted handicap of anxiety and depression. Cf. Locke v. W.R. Grace & Co., 18 Mass. L. Rptr. 509, 2004 WL 2915725, at *5 (Mass.Super.Ct. 2004) (evidence suggested that defendants’ actions were motivated by perception that plaintiff was handicapped due to stress).