## GARY DIXON *vs.* CITY OF MALDEN. .

Middlesex. November 6, 2012. - March 4, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Massachusetts Wage Act. Contract,* Employment. *Damages,* Termination of
employment contract. *Employment,* Termination. *Municipal Corporations.
Public Employment,* Vacation pay.

Discussion of the requirement under the Wage Act, G. L. c. 149, §§ 148, 150,
that an employer pay an employee for earned, unused vacation time on the
day of the employee's discharge. [449-450]
An employer's failure to pay an employee for earned, unused vacation time,
i.e., unpaid wages as defined by the Wage Act (act), G. L. c. 149, § 148,
could not be mitigated by the employer's gratuitous, after-the-fact pay-
ments; therefore, the employee could seek relief pursuant to the act
[450-452]; further, given that the act imposes strict liability on employers,
the employee incurred damages under the act when the employer did not
pay his earned, unused vacation time on the day he was terminated from
employment [452-453].
A plaintiff employee who prevailed in a civil action for damages incurred due
to his employer's violation of the Wage Act, G. L. c. 149, § 148, was
entitled to an award of his litigation costs and attorney's fees. [453]
In a civil action brought in 2007 for damages incurred due to an employer's
violation of the Wage Act, G. L. c. 149, § 148, in which the plaintiff
employee prevailed, the judge did not abuse his discretion in determining
that, where the employer's conduct was not outrageous, the plaintiff was
not entitled to treble damages. [453]

CIVIL ACTION commenced in the Superior Court Department on
November 1, 2007.

The case was heard by *Thomas P. Billings,* J., and a motion
for reconsideration was considered by him.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Alfred Gordon* for the plaintiff.

*Kathryn M. Fallon* for the defendant.

IRELAND, C.J. We transferred this case from the Appeals Court
on our own motion to consider whether undifferentiated

gratuitous weekly payments made by the city of Malden (city) to the plaintiff, Gary Dixon, after he was discharged covered his claim for unpaid vacation days under G. L. c. 149, §§ 148 and 150 (Wage Act). The plaintiff appeals from a judgment of the Superior Court dismissing his claim against the city. He asserts that a Superior Court judge erred in dismissing his claim under the Wage Act for vacation pay, costs, attorney's fees, and treble damages on the ground that, although the manner of the payments violated the express language of the Wage Act, the city nevertheless compensated the plaintiff. Because we conclude that the city could not cast those payments as vacation pay after the fact and that the plaintiff is entitled to recover his vacation pay in addition to costs and attorney's fees, we remand the case to the Superior Court for entry of a judgment consistent with our opinion.

*Facts and procedure.* We present the essential facts found by the judge after a jury-waived trial.

In 1983, the city appointed the plaintiff as a director of a city-owned nursing home, where the plaintiff worked until March, 2007. Although a city ordinance provided for successive two-year terms of appointment, the city did not formally reappoint the plaintiff to his position after 1996. He continued working in a "holdover capacity," apparently under a provision in a city ordinance providing that appointed officials hold office "until a successor shall be chosen and qualified." As a city employee, the plaintiff was entitled to a certain number of vacation days each year, based on years of service.

In December, 2006, the plaintiff was notified that his position at the nursing home was going to be discussed at a meeting of the city's board of health, the appointing authority for the plaintiff's position. The plaintiff and his counsel attended. Although the board unanimously approved a motion not to reappoint the plaintiff, at the request of his counsel, it agreed to negotiate with the plaintiff over retirement and severance issues. No settlement agreement was in place before the plaintiff was informed that a successor, who was to begin March 20, 2007, had been appointed. In a letter dated March 21, 2007, the plaintiff was instructed that he was relieved of all responsibilities and should turn in his keys, leave the facility immediately, and

contact the human resources department for an exit interview and details concerning benefits.

At the time of his departure, the plaintiff had accrued fifty days of unused vacation time, amounting to $13,615.54. The plaintiff was not paid for these vacation days on the day of his termination. Although the city asserted that it terminated the plaintiff for cause,[1] the mayor authorized a continuation of the plaintiff's salary and benefits until June 29, 2007. The mayor did not communicate to the plaintiff that the continuing salary payments were vacation pay. The plaintiff received weekly payments, which included standard deductions for income tax, retirement, insurance, and the like, through the regular payroll system. His final paystub from this period shows fifty days of accrued vacation time.

The plaintiff filed an action in the Superior Court alleging, insofar as relevant here, that the city violated the Wage Act when it failed to pay him for his accrued vacation days on March 20, 2007, the day he was terminated.[2]

In his written findings of fact, conclusions of law, and order of judgment, the judge found, and the parties do not dispute, that the parties' employment agreement included the benefit of vacation time. The judge noted that the plaintiff was terminated prior to our decision in *Electronic Data Sys. Corp.* v. *Attorney Gen.*, 454 Mass. 63, 71 (2009) (*Electronic Data Sys. Corp. [No. 2]*), and made no finding whether the plaintiff was terminated for fault. The judge found that, by failing to pay the plaintiff for his vacation time on the day he was terminated, the city did not act in compliance with the Wage Act. However, the judge determined that, when the city paid a "salary continuation"

[1]According to city ordinance § 8.9(5), the city of Malden (city) will not pay vacation pay equivalent to employees who are terminated for fault: "[a]ny employee who is eligible for earned vacation leave under this Section whose service is terminated by lay-offs, resignations, [or] dismissal through no fault or delinquency of their own . . . shall be paid vacation pay equivalent to any unused earned vacation leave available as of the termination date. No vacation pay equivalent shall be granted to any employee whose services are terminated for reasons other than as stated in this paragraph."

[2]The plaintiff pursued his private action claim by attaining the Attorney General's assent in writing pursuant to G. L. c. 149, § 150. See *Melia* v. *Zenhire, Inc.*, 462 Mass. 164, 171 n.7 (2012) (Wage Act allows public and private enforcement).

after the plaintiff was terminated, the plaintiff "came away with more from the City than was owed; therefore he was not damaged by the city's treatment of him at termination."[3] The judge also stated that, because the city acted in good faith and its actions were not outrageous, the plaintiff was not entitled to treble damages.

The plaintiff moved to reconsider. In his memorandum and order on the plaintiff's motion, the judge stated, among other things, that the plaintiff's salary continuation "more than mitigated [his] damages for unpaid vacation"; that the "any damages incurred" clause in G. L. c. 149, § 150, did not allow the plaintiff to be awarded damages in these circumstances; and that the plaintiff was not entitled to attorney's fees.

*Discussion.* 1. *Statutory framework.* We begin by setting forth the relevant statutes. General Laws c. 149, § 148, provides, in relevant part,

> "[A]ny employee discharged from . . . employment shall be *paid in full on the day of his discharge . . . . The word "wages" shall include* any holiday or *vacation payments* due an employee under an oral or written agreement . . . . *No person shall by a special contract with an employee or by any other means exempt himself from this section.*" (Emphases added.)

The version of G. L. c. 149, § 150, applicable to this case[4] states, in relevant part,

> "An employee claiming to be aggrieved by a violation of section 148 . . . may . . . institute and prosecute in his own name . . . a civil action for injunctive relief and *any damages incurred,* including treble damages for any loss

---

[3]The mayor testified at trial that the plaintiff was paid after his termination in "an attempt to settle [his] claims." The judge interpreted this statement to mean "he hoped [the plaintiff] would consider himself fairly treated and would abandon any claims he had." There was no written settlement agreement between the parties concerning the plaintiff's termination.

[4]Subsequent to the filing of the complaint in this case, G. L. c. 149, § 150, was amended to mandate treble damages when an employer violates G. L. c. 149, § 148. St. 2008, c. 80, § 5. See *Melia* v. *Zenhire, Inc., supra* at 171 n.8. This amendment does not apply retroactively. *Rosnov* v. *Molloy,* 460 Mass. 474, 483 (2011).

of wages and other benefits. An employee so aggrieved and who prevails in such an action shall be entitled to an award of the costs of litigation and reasonable attorney fees." (Emphasis added).

We interpreted the language of the Wage Act in *Electronic Data Sys. Corp. (No. 2), supra.* In that case, we concluded that the Wage Act plainly states that wages "shall include any holiday or vacation payments due an employee under an oral or written agreement," *id.* at 67, and that employers must pay unused, earned vacation time to employees who have been involuntarily discharged. *Id.* at 71. See *Electronic Data Sys. Corp.* v. *Attorney Gen.,* 440 Mass. 1020, 1021 (2003) (*Electronic Data Sys. Corp. [No. 1]*) (where terminated plaintiff was "owed vacation time under the employment agreement, payment for that unused vacation time is a form of 'wages' that must be paid pursuant to § 148").

In reaching our conclusion in *Electronic Data Sys. Corp. (No. 2), supra* at 71, we deferred to the guidance of the Attorney General, who has exclusive authority to enforce this statute.[5] The Attorney General's Advisory 99/1 states, and our conclusion concurs, that "[u]pon separation from employment, employees must be compensated by their employers for vacation time earned . . . . [A]n employer may not enter into an agreement with an employee under which the employee forfeits earned wages, including vacation payments." *Electronic Data Sys. Corp. (No. 2), supra* at 68, 71.

2. *Weekly payments as substitute for vacation pay.* The city's

---

[5]The city argues that *Electronic Data Sys. Corp.* v. *Attorney Gen.,* 454 Mass. 63 (2009) (*Electronic Data Sys. Corp. [No. 2]*), offers an invitation to argue for another interpretation of the Wage Act. However, the city misinterprets the court's statement that "[t]he Attorney General's interpretation is not the only meaning that could be attached to the phrase 'vacation payments due . . . under an [employment] agreement.' " *Id.* at 71. The city contends that this sentence means there may be other interpretations of the statute depending on the particular city ordinance that granted benefits. Our discussion in that case was a statement of fact, not a suggestion that we were departing from our long-standing principle that we defer to the guidance of administrative agencies where their guidance is reasonable. See, e.g., *Rosing* v. *Teachers' Retirement Sys.,* 458 Mass. 283, 290 (2010) (where agency's determination reasonable, court does not substitute its own judgment); *Smith* v. *Winter Place LLC,* 447 Mass. 363, 367-368 (2006).

primary argument is that the statute allows for mitigation of unpaid vacation payments by later payments. It asserts that it fully compensated the plaintiff for his vacation pay because it paid him, after his termination, salary payments totaling approximately $19,700, which is more than the amount of his vacation pay of approximately $13,615. The city also contends that, because it paid other benefits such as retirement and health insurance to the plaintiff after his termination, the plaintiff was paid more than the equivalent of his vacation pay.[6]

The city's payment of salary and benefits after the plaintiff's termination, however, does not provide a substitute for payment for accrued vacation time. The city did not characterize the continued salary payments as payment for vacation accrual, and the city did not communicate in any way that the salary continuation was payment for accrued vacation time. In fact, the plaintiff's final pay stub from the city reflects a balance of fifty hours of vacation accrual, a balance which was "still tallied" and "carried on" by the city's payroll system through the pay period ending on June 29, 2007. The vacation balance on the pay stubs was not decreased when the city paid the salary continuation. Rather, the city continued to make salary payments in "an attempt to settle [the plaintiff's] claims."[7] Gratuitous salary

---

[6]In its brief, the city maintains that sections of the city ordinance granting benefits such as vacation time, sick leave, and retirement benefits, as well as the ordinance section requiring an involuntarily terminated employee to forfeit accrued vacation pay, act "in tandem" with G. L. c. 149, § 148. At oral argument, however, the city conceded that the forfeiture clause was in contravention of the Wage Act. We note that city ordinances, like employment policies, if found to violate State laws, may be struck down. See, e.g., *Electronic Data Sys. Corp. (No. 2), supra* at 64. Here, city ordinance § 8.9(5) withholding accrued vacation pay appears similar to the invalid policy that took away an employee's accrued vacation time in *Electronic Data Sys. Corp. (No. 2), supra* at 66-67. The trial judge correctly found this ordinance invalid. Because the ordinance is invalid, we need not determine whether the judge erred by not permitting the city to submit evidence at trial that the plaintiff was terminated for fault.

[7]The city also argues that when coupled with payment for vacation pay, the plaintiff's salary continuation would create a windfall for the plaintiff. We have discussed "windfall" in the context of G. L. c. 149, § 148B, and have noted that "[t]he 'windfall' the Legislature appeared most concerned with is the 'windfall' that *employers* enjoy from the misclassification of employees as independent contractors [such as] the avoidance of holiday, vacation, and overtime pay" (emphasis added). *Somers* v. *Converged Access, Inc.,* 454 Mass. 582, 592 (2009).

payments, and the benefits associated with salary payments, do not constitute payment for earned and accrued vacation time.[8]

Moreover, the Wage Act requires employers to pay discharged employees earned wages "on the day of [their] discharge." G. L. c. 149, § 148. Here, the city paid the plaintiff on a continuing basis after his last day in the city's employ. The plaintiff's receipt of salary and benefits after his termination does not diminish the fact that the plaintiff was not paid for his accrued vacation time on the day of his discharge. No provision of the statute allows an employer, after terminating an employee with or without cause, to claim that later payments, in the form of salary and other benefits, compensate for earned and unused vacation time. G. L. c. 149, § 148. See *Electronic Data Sys. Corp. (No. 2), supra* at 70-71 (legislative history of Wage Act does not show intent to "allow employers free rein to deny or condition earned 'vacation payments' in any way they choose").

We conclude that the failure to pay unpaid wages, as defined by G. L. c. 149, § 148, cannot be mitigated by gratuitous, after-the-fact payments, and that employees who have not received payment for unused vacation time to which they are entitled may seek relief pursuant to G. L. c. 149, § 150. See *Electronic Data Sys. Corp. (No. 2), supra* at 71.

3. *Failure of proof of damages.* The city asserts that the judge properly concluded that G. L. c. 149, § 150, requires a plaintiff to show he suffered actual damages. The city relies on several cases that do not have precedential value to support its argument that damages incurred can be mitigated by payments made after an employee's termination and that the plaintiff must affirmatively show actual damages to succeed in a Wage Act claim. These cases are distinguishable on their facts.

Contrary to the city's assertion, a violation of the Wage Act results in damages. It is settled law that the Wage Act "impose[s] strict liability on employers." *Somers* v. *Converged Access, Inc.,* 454 Mass. 582, 592 (2009). Employers must "suffer the consequences" of violating the statute regardless of intent. *Id.* at 591. In these circumstances, the plaintiff has incurred damages

---

[8]We note that had the city paid the plaintiff payments labeled as vacation pay, and merely been late in those payments, the city would not have been foreclosed from offsetting those payments from what was owed.

under the terms of the statute because the city did not pay his earned, unused vacation time, a definitive amount of $13,615.54, when he was terminated from the city's employment. See *Electronic Data Sys. Corp. (No. 2), supra* at 71; *Wiedmann* v. *The Bradford Group, Inc.,* 444 Mass. 698, 708 (2005).

4. *Litigation costs, attorney's fees, and treble damages.*

The Wage Act provides that an employee aggrieved by a violation of G. L. c. 149, § 148, who prevails in a civil action for any damages incurred is entitled to an award of the costs of the litigation and reasonable attorney's fees. G. L. c. 149, § 150. See *Electronic Data Sys. Corp. (No. 1), supra* at 1021 ("Where [the plaintiff is] owed vacation time under the employment agreement, payment for that unused vacation time is a form of 'wages' that must be paid pursuant to § 148"). Because it did not pay the plaintiff his wages in contravention of the Wage Act, the city must pay the plaintiff litigation costs and reasonable attorney's fees.

The Wage Act, as it existed when this action commenced, gave the judge discretion to award treble damages. See *Goodrow* v. *Lane Bryant, Inc.,* 432 Mass. 165, 178-179 (2000), quoting *Dartt* v. *Browing-Ferris Indus., Inc.,* 427 Mass. 1, 17a (1998) (treble damages appropriate where conduct is "outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others"). The plaintiff asserts that the city has acted with reckless indifference to his and other city employees' rights by adhering to an unlawful ordinance requiring terminated employees to forfeit accrued vacation pay. However, we conclude that, on these facts, the judge did not abuse his discretion when he determined that, because the city's conduct was "not outrageous," the plaintiff was not entitled to treble damages. See *Wiedmann* v. *The Bradford Group, Inc., supra* at 709-710.

*Conclusion.* For the reasons set forth above, we reverse judgment and remand the case to the Superior Court to award the plaintiff vacation pay, litigation costs, and reasonable attorney's fees.

*So ordered.*