Troy, PaulE., J.
INTRODUCTION
Plaintiff Susan Salter (“Salter”) filed this action against her former employer, Ronald Wayne Lopez (“Lopez”), alleging violation of the Massachusetts Wage Act, G.L.c. 149, §148, and bad faith termination. This matter is before the court on the parties’ cross motions for summary judgment pursuant to Mass.R.Civ.P. 56. For the reasons discussed below, Lopez’s motion for summary judgment is ALLOWED in part and DENIED in part, and Salter’s cross motion is DENIED.
BACKGROUND
The undisputed facts as revealed by the summary judgment record are as follows. Salter has been a licensed Massachusetts real estate agent since 1980. Lopez is a licensed Massachusetts real estate broker. On April 6, 2010, Lopez entered into a written Consulting Agreement with Province Development Partnership to promote, market, and sell condominium units at 45 Province Street in Boston. For purposes of this agreement, Lopez began conducting business under the name RESIS. Under the agreement, Lopez received a salary of $15,000 per month in addition to a sales commission of .750% of the gross selling price net of selling incentives included in the sales contract. He was the exclusive sales and marketing consultant for the condominiums.
On April 23, 2010, Salter signed a written Sales Consultant Agreement (“the Agreement”) with Lopez to “provide expertise, guidance, and services” to Lopez in meeting his responsibilities to promote, market, and *611 sell the condominiums. Paragraph 2 of the Agreement states that Salter will serve as an independent contractor and will be responsible for paying her own health insurance and income taxes. Paragraph 4 of the Agreement lists some of Salter’s specific duties and requires that she act in a professional manner in performing them. Paragraph 5 of the Agreement provides that Salter will receive a consulting fee of $7,000 per month, paid twice monthly in equal amounts of $3,500. In addition, the Agreement entitles Salter to a performance bonus or commission for each residential unit that:
during the Term of this Agreement (up to expiration or earlier termination thereof, and subject to the terms and conditions herein stated), is placed [sic] sold under a binding Purchase and Sale Agreement; other than units reserved for the purposes of this Agreement as “family and friends units” which shall be exempt from the Commissions calculations and payment obligations. See Schedule A attached hereto and incorporated herein for detail.
Bonus Payments shall be deemed earned and shall be payable as follows: upon Closing on the unit (i.e., upon recording of the unit deed and clearance of closing funds).
Schedule A provides for a Sales Commission of .375% of the gross selling price net of selling incentives included in the sales contract. Paragraph 6 of the Agreement provides:
This Agreement may be terminated by either party, immediately at any time, “for cause” by giving written notice. For these purposes, “cause” shall be defined as: (i) Sales Consultant’s failure to perform as set forth in Section 4 or 7 hereof; (ii) Sales Consultant has been determined to have acted in a negligent manner in the discharge of any responsibilities under Section 4 hereof; (iii) Sales Consultant has made any statements to the general public or to any buyer or prospective buyer which are incorrect or misleading; (iv) Sales Consultant has made any statements to the general public or to any buyer or prospective buyer such that the reputation of the Property owner (or any of its principals) or the Condominium may be impugned or derogated; (v) Sales Consultant has engaged in fraud, or any willful misconduct; or (vi) the termination of the Marketing Consultant’s contract with the Property owner.
This Agreement may be terminated by either party, at any time, “without cause” upon thirty (30) days written notice to the other party.
Paragraph 9 of the Agreement provides:
Any notice hereunder shall be given in writing by registered or certified mail, return receipt requested, postage prepaid (which shall be deemed given three business days from the day of posting) or by delivery by Federal Express or other generally recognized commercial overnight delivery service (which shall be deemed given the next day after delivery to such earner).
Although the Agreement deemed her an independent contractor, Salter functioned as Lopez’s employee. Lopez dictated her work schedule and she reported to him. The services Salter performed were within the usual course of Lopez’s real estate marketing business. She worked exclusively for Lopez and performed sales and marketing activities for other properties under the umbrella of Lopez’s broker license.
Salter did not have to cause a sale to happen or procure a buyer in order to get a commission under the Agreement. She and Lopez worked as a team and they split the commission on every condominium unit sold. They were paid at the closing when the deed to the unit was recorded. If a deal fell through after a purchase and sale agreement was signed and the unit did not close, neither of them received any commission.
Lopez and Salter had a half-hour meeting on November 14, 2011. Lopez told Salter that their arrangement was not working for him and he no longer wanted her to work there because she was not selling any units, and he was doing all the sales. Lopez did not expressly state that he was terminating Salter for cause, and in Salter’s view, did not specify any “cause” as defined in the Agreement. Lopez, however, testified that he told Salter that she had a poor attitude and was not conducting herself in a professional manner. Although he did not explain or go into details during his meeting with Salter, in his deposition, Lopez cited the fact that a prospective client had complained about having an “unpleasant experience” with her. He had a prior discussion with Salter about this incident. In addition, Salter had accused an administrative staffer of stealing money from her wallet, which Lopez could not substantiate, leading to a strained atmosphere in the office. Finally, in early November, Salter had accused Lopez of purposely scheduling a social meeting with a client to exclude her. In response, Lopez told Salter that he was sick of her and her attitude.
According to Salter, she was shocked by the termination because Lopez had never told her about any problems. She told him that she was working hard and had come in on her day off because she had so many appointments. She stated that she had at least four very strong contenders who were interested in the condominiums. Salter asked Lopez to keep her on until the end of the year because they were only six units away from receiving a bonus. Lopez said he would think about it. Nonetheless, Salter understood that she was terminated, effective immediately. Lopez handed Salter a $3,500 check, issued from the RESIS account, representing her salary under the Agreement from November 1 to 15. She gathered her belongings and left the building. Salter deposited the check the next day.
*612 On the evening of November 14, Salter emailed Lopez, stating that she was “totally flabbergasted” by their meeting and had no idea that he had such negative feelings about her. She stated that she was committed to the condominium project and wanted to take on more responsibility and increase her sales. She noted that they only had to sell six more units before the end of the year to receive a bonus. Salter asked Lopez to give her a fair chance to prove herself through the end of the year.
Lopez responded by email the next day: “based after much consideration on all factors, I have determined, based on our discussions, performance and skill sets, to move forward with a change effective immediately of termination of your independent contractor agreement with REIS. I have prepared an equitable transition plan and can either forward to you via email or can meet at 1 or 4 pm to review in detail.” Salter requested that Lopez email her the plan.
Lopez sent Salter a proposal dated November 15, 2011 and entitled, “Termination of Independent Contractor Agreement,” which indicated that it was sent “via return receipt email and certified mail.” Salter received this document by email on November 18, and by U.S. mail with a return receipt on November 22. The letter stated: “As to written email notification dated 15 November 2011, Sales Consultant Independent Contractor Agreement terminates effective immediately in accordance with the terms and provisions of the contract section 4 Sales Consulting Services and Responsibilities and Section 6 Termination.” By this, Lopez intended to reference the requirement that Salter act in a professional manner under Paragraph 4 of the Agreement. In the letter, Lopez proposed to pay Salter a commission on Unit 1806 and Unit 1906 if they closed, and a commission for Unit 1702 if it converted to a binding purchase and sales agreement. He further proposed:
You may choose to remit to me a list of mutually agreeable prospects, on or before Friday at 5 pm 18 November 2011, for which you have been working with and are the sole procurer of. I as marketing consultant will work exclusively with these prospects and if any of these are brought to binding purchase and sales contract on or before 15 December 2011 payment as noted above under noted terms and conditions shall be made.
If from amongst the remitted prospects, minimally 3 are converted to binding purchase and sales contracts on or before 15 December 2011 and they are part of and or contribute to a 2011 yearly cumulative sales bonus received by marketing consultant, as previously noted $1,000 per unit of total sales up to 36, or as received per unit shall be paid.
The letter ended, “You may countersign below, on or before 18 November 2011, if you choose to move forward under terms noted above and an appropriate Release and Termination Agreement will be forwarded.” Salter believed that Lopez’s proposal was inequitable and did not respond. She did not contact Lopez to discuss the plan and instead, hired an attorney, who informed her that Lopez had not complied with the terms of the Agreement in terminating her.
Lopez replaced Salter with Tina Bacci (“Bacci”) in mid-November and formed RESIS, LLC on November 29, 2011. He has a 50% membership interest in the LLC and Bacci holds the other 50% interest. Lopez’s agreement with Province Development Partners was never assigned to RESIS, LLC.
On December 7, 2011, Salter signed an independent contractor agreement with Hammond Residential to list and sell real estate. On December 28, Salter filed a Non-Payment of Wage and Workplace Complaint Form with the Massachusetts Attorney General’s Office, listing her last date of employment as November 15,2011. On March 1,2012, Lopez sent Salter a letter with an attachment showing amounts paid to her for the year 2011, including a duplicate salary payment and a commission for the sale of Unit 1906. In the letter, Lopez stated that Salter owed him money for payments he had made to keep her on his Blue Cross Blue Shield policy and the duplicate payment.
Salter filed this action against Lopez on March 12, 2012. Count I of her Amended Complaint alleges that Lopez violated the Massachusetts Wage Act, G.L.c. 149, §148, by failing to pay her wages and commissions. Count II alleges that Lopez terminated her in bad faith to deprive her of commissions to which she was entitled.
Salter received a $14,387.57 commission on the sale of 45 Province Street, Unit 1204 to Smita Sihag on March 29, 2012. Hammond received an additional $968.50 on this transaction. On September 6, 2012, Lopez paid Salter a commission of $4,676.25 for the sale on Unit 1806, which occurred on August 20. Salter asserts that Lopez owes her salary from November 16 through December 24 in the amount of $9,258.10, and commissions on the sales of four condominium units which closed before December 24, 2011: Units 1702, 2101, 2801, and 2803.[1] Salter has calculated that these commissions total $27,585.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving parly to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that *613 the opposing party has no reasonable expectation of proving an essential element of his case at trial. Fles-ner v. Technical Communications Corp., 410 Mass. 805,809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
I. WAGE ACT CLAIM
The parties have filed cross motions for summary judgment on Count I of the Amended Complaint, which alleges a violation of the Wage Act, G.L.c. 149, §148 (“the Act”), which provides in relevant part:
... an employer may make payment of wages prior to the time that they are required to be paid under the provisions of this section, and such wages together with any wages already earned and due under this section, if any, may be paid weekly, bi-weekly, or semi-monthly to a salaried employee, but in no event shall wages remain unpaid by an employer for more than six days from the termination of the pay period in which such wages were earned by the employee.
[[Image here]]
This section shall apply, so far as apt, to the payment of commissions when the amount of such commissions, less allowable or authorized deductions, has been definitely determined and has become due and payable to such employee, and commissions so determined and due such employees shall be subject to the provisions of section one hundred and fifty.
G.L.c. 149, §148. Section 150 of the Act permits an employee to file a complaint with the Attorney General and thereafter, to sue for withheld wages and commissions as well as mandatory treble damages and attorneys fees. See G.L.c. 149, §150; Dixon v. Malden, 464 Mass. 446, 449 n.4 (2013). The purpose of the Act is to prevent employers from unreasonably detaining employees’ wages. Lipsettv. Plaud, 466 Mass. 240, 245 (2013). The Act imposes strict liability on employers, who must suffer the consequences of violating the statute regardless of intent. Dixon v. Malden, 464 Mass, at 452.
Salter contends that because Lopez terminated her without cause and the Agreement required thirty days written notice for such a termination, she is entitled to recover, under the Act, wages and commissions through the contractually effective termination date of December 24, 2011. The Act is violated when an employer fails to pay an employee “earned” wages. Massachusetts State Police Commissioned Officers Ass’n v. Commonwealth, 462 Mass. 219, 225 (2012). A wage is “earned” when it is acquired by labor, service, or performance. Id. at 226. Here, it is undisputed that Salter did not perform any work for Lopez during the two weeks following her termination on November 14, 2011. Accordingly, the salary for those weeks does not constitute earned wages recoverable under the Act. See Prozinski v. Northeast Real Estate Serv., LLC, 59 Mass.App.Ct. 599, 603 (2003) (Wage Act does not extend to unearned but contractually bargained-for compensation, such as severance pay for terminated employee); Fitzgerald v. ChipwrightsDesign, Inc., 2005 Mass.Super. LEXIS 329 at *7-9 (Kern, J.) [19 Mass. L. Rptr. 558] (where employment contract provided that employee would be given three months notice prior to termination and paid regular salary and benefits during that period, salary for those three months was not recoverable under Wage Act because employee did not actually work and earn wages during that period). Cf. McQueen v. True Partners Consulting, LLC, 2011 Mass.Super. LEXIS 108 at *9 (Troy, J.) [28 Mass. L. Rptr. 411] (following his termination, plaintiff was no longer “employee” within meaning of Wage Act and could not be owed wages allegedly earned after that date). Lopez therefore is entitled to summary judgment on as much of Count I of the Amended Complaint as seeks to recover unpaid salary.
However, Lopez has not demonstrated as a matter of law that Salter’s claim for unpaid commissions is beyond the scope of the Wage Act. The Act is violated when an employer fails to pay a definitively determined commission which has become due and payable to the employee. Weems v. Citigroup, Inc., 453 Mass. 147, 151 (2009); DeSantis v. Commonwealth Energy Sys., 68 Mass.App.Ct. 759, 760 (2007). When a compensation agreement specifically establishes the contingencies an employee must meet to earn a commission, courts apply the terms of the agreement in determining whether a commission is “due and payable” for purposes of the Act. McAleer v. Prudential Ins. Co. of Amer., 928 F.Sup.2d 280, 289 (D.Mass. 2013). See, e.g., DeSantis v. Commonwealth Energy Sys., 68 Mass.App.Ct. at 760 (employer violated Wage Act where employee’s contract entitled him to commission upon sale of a natural gas supply contract, but employer failed to pay at that time).
Here, the Agreement entitled Salter to a commission upon the closing of a condominium unit. It is undisputed that Salter performed no work for Lopez after November 14, 2011, when Units 1702, 2101, 2801, and 2803 closed. However, the Agreement does not purport to limit the entitlement to commissions to closings which occurred while she was an active employee. If Salter was in fact entitled to thirty days notice of termination, the Agreement remained in effect until December 24, rendering Lopez liable for commissions which became “due and payable” during that period. See, e.g., McAleer v. Prudential Ins. Co. of Amer., 928 F.Sup.2d at 290 (terminated employee who received commissions upon sale of insurance policies was entitled to commissions on premiums collected by company from July 24, his last day actually working in office, and official termination date of December 21, where he continued on employer’s rolls during that period as active employee receiving health benefits and paychecks for accrued vacation time). Cf. Sheedy v. *614 Lehman Bros. Holdings, Inc., 2011 U.S.Dist. LEXIS 131003 at *9-11 (Stearns, J.) (terminated employee not entitled to unearned portion of signing bonus given to her as forgivable loan because retention of bonus was contingent on her continued employment); Scalli v. Citizens Fin. Group, Inc., 2006 WL 1581625 at *14 (D.Mass.) (Woodlock, J.) (suggesting that terminated employee not entitled under Wage Act to commissions “in her pipeline” that she would have seen through to closing had she not been wrongfully terminated). Accordingly, Lopez’s motion for summary judgment on Count I must be denied with respect to commissions.[2]
In addition, Salter’s cross motion for summary judgment must be denied. The premise of her Wage Act claim is that Lopez terminated her without cause, entitling her to thirty days written notice under the Agreement. However, Lopez contends that he terminated her on November 14, 2011 for cause, effective immediately. The factfinder must decide whether Lopez unequivocally and properly terminated Salter for cause under the Agreement. See York v. Zurich Scudder Investments, Inc., 66 Mass.App.Ct. 610, 618 (2006) (whether termination was for good cause is generally jury question). If Salter was terminated for cause, she cannot recover the commissions at issue under the Wage Act, because they became due and payable only after the effective date of her termination.
H. BAD FAITH TERMINATION CLAIM
Lopez further moves for summary judgment on Count II on the ground that Salter has no reasonable expectation of proving that he terminated her in bad faith. Every contract contains an implied covenant of good faith and fair dealing which requires that neither parly do anything to destroy or injure the other’s right to the fruits of the contract. T.W. Nickerson, Inc. v. Fleet Nat’lBank, 456 Mass. 562, 571 (2010). The purpose of the covenant is to guarantee that the parties remain faithful to their intended and agreed upon expectations in performing under the contract. Id. at 570. For example, an employer may not discharge an employee without just cause for the purpose of retaining sales commissions based on past service or reaping for himself other financial benefits due the employee. Maddaloni v. Western Mass. Bus Lines, Inc., 386 Mass. 877, 881 (1982); Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 672 (1981); York v. Zurich Scudder Investments, Inc., 66 Mass.App.Ct. at 615. The covenant of good faith and fair dealing prevents an employer from unjustly enriching himself by depriving the employee of money which she fairly earned and legitimately expected. Maddaloni v. Western Mass. Bus Lines, Inc., 386 Mass, at 884.
Lopez contends that he is entitled to summary judgment because Salter never disagreed with his assertions that he was making all the sales and she was unprofessional, and there is no evidence that he terminated the Agreement in bad faith. There is no requirement that bad faith be shown; rather, the plaintiff has the burden of proving a lack of good faith, which may be inferred from the totality of the circumstances. T.W. Nickerson, Inc. v. Fleet Nat’l Bank, 456 Mass, at 570. Viewed in the light most favorable to Salter, the summary judgment record raises a genuine issue of material fact with respect to whether Lopez lacked good faith in terminating the Agreement on November 14, 2011. The record reveals that Salter was “flabbergasted” by Lopez’s accusations of unprofessionalism; Lopez did not clearly invoke the “for cause” provision of the Agreement; at the time of the termination, Lopez did not cite any of the incidents which he now invokes to support his assertion of cause; it is questionable whether Lopez complied with the written notice requirements of the Agreement; and when terminated, Salter was on the brink of earning commissions on numerous condominium units. A jury must decide whether Lopez properly terminated Salter for cause under the Agreement, terminated her without cause for grounds reasonably related to the needs of his business, or terminated her at least in part to avoid paying commissions on imminent closings. See Maddaloni v. Western Mass. Bus. Lines, Inc., 386 Mass, at 882 (jury not required to believe employer’s proffered legitimate business reason for terminating employee owed commissions); York v. Zurich Scudder Investments, Inc., 66 Mass.App.Ct. at 618 (whether termination was for good cause is generally a jury question). Although the evidence of improper motive is weak, only a “toehold” is necessary to survive summary judgment. See DiPietro v. Sipex Corp., 69 Mass.App.Ct. 29, 36-37, rev. den., 450 Mass. 1102 (2007).[3]
ORDER
For the foregoing reasons, it is hereby ORDERED that the Motion By Defendant Ronald Wayne Lopez for Summary Judgment is ALLOWED with respect to so much of Count I of the Amended Complaint which seeks to recover unpaid salary under the Wage Act, but is otherwise DENIED. It is further ORDERED that Plaintiffs Cross Motion For Summary Judgment be DENIED.

Unit 2101 was sold on November 23; Unit 2803 was sold on November 21; Unit 2801 was sold on November 30; and Unit 1702 was sold on December 16, 2011.

his Court acknowledges but gives little weight to Rosnov v. Molloy, 460 Mass. 474 (2011), in which the trial judge found that a referral fee on a case which settled in March of 2007 was a “commission” recoverable under the Wage Act by an employee who had resigned her employment on June 25, 2006. Id. at 475-76. Notably, the employer in Rosnov did not challenge on appeal the conclusion that the referral fee was recoverable under the Act; rather, the sole issue before the Supreme Judicial Court was the retroactivity of a 2008 amendment to the Act which made treble damages mandatory rather than discretionary. See id. at 476 & n. 5.

It should be noted that the remedy for a bad faith termination is limited to the recovery of unpaid commissions and does not include lost wages which were not actually earned by Salter prior to her discharge. See Maddaloni v. Western Mass. Bus. Lines, Inc., 386 Mass, at 884.