NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12542


LAURITA SULLIVAN[1] & another[2]  vs.  SLEEPY'S LLC & another.[3]



Suffolk.     February 4, 2019. - May 8, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, & Kafker, JJ.



Massachusetts Wage Act.  Labor, Wages, Overtime compensation, Minimum wage.  Minimum Wage.



Certification of questions of law to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.


Stephen S. Churchill (James D. Livingstone also present) for the plaintiffs.
Diane M. Saunders for the defendants.
Joshua D. Nadreau, Joseph W. Ambash, & Jeffrey A. Fritz, for Massachusetts State Automobile Dealers Association & another, amici curiae, submitted a brief.

---

[1] Individually and on behalf of all others similarly situated.

[2] Carlos Bryant, individually and on behalf of all others similarly situated.

[3] Mattress Firm, Inc.

KAFKER, J.  The issue presented is whether retail salespeople who are paid entirely in commissions or draws (i.e., advances on commissions) are entitled to additional overtime or Sunday pay pursuant to G. L. c. 151, § 1A (overtime statute), and G. L. c. 136, § 6 (50) (Sunday pay statute).  More particularly, we consider whether the defendant employers satisfied their obligations under these statutes when they paid draws or commissions that always equaled or exceeded the minimum wage for the plaintiff employees' first forty hours of work and one and one-half times the minimum wage for all hours worked over forty hours or on Sunday.  We conclude that draws and commissions cannot be retroactively allocated as hourly and overtime wages and Sunday pay even if these draws and commissions equaled or exceeded the minimum wage for the employees' first forty hours of work and one and one-half times the minimum wage for all hours worked over forty hours or on Sunday.  Rather, the employees are entitled to separate and additional payments of one and one-half times the minimum wage for every hour the employees worked over forty hours or on Sunday.[4]

---

[4] We acknowledge the amicus brief submitted in support of the defendants by the Massachusetts State Automobile Dealers Association and the Retailers Association of Massachusetts.

This case comes to us in the form of the following certified questions of first impression from the United States District Court for the District of Massachusetts:

"1. If a [one hundred percent] commission inside sales employee[5] works more than forty hours in a given work week, is the employee entitled to any additional compensation specifically for overtime hours worked when the employee's total compensation (through draws[6] and commissions) for that workweek is equal to or greater than 1.5 times the employee's regular rate or at least 1.5 times the minimum wage for all hours worked over [forty] hours in a workweek? If additional compensation is due, what is the employee's regular rate for purposes of calculating overtime pay?"

We answer this question "yes." We further explain that the employee is entitled to one and one-half times the minimum wage times the number of hours over forty that the employee works in a work week.

"2. If a [one hundred percent] commission inside sales employee works on a Sunday in a given workweek, is the employee entitled to any additional compensation for Sunday premium pay when the employee's total compensation (through draws and commissions) for that workweek compensates the employee in an amount equal to or greater than 1.5 times the employee's regular rate or at least 1.5 times the minimum wage for all Sunday hours worked? If additional compensation is due, what is the employee's regular rate for purposes of Sunday premium pay?"

---

[5] An "inside sales employee" refers to an employee who makes sales at the employer's place of business (i.e., a shop or store). M. Snyder, Compensation and Benefits § 16:66 (2005).

[6] "A 'draw' is a type of salary advance or loan intended to cover a salesperson's living costs." Snyder, Compensation and Benefits, supra at § 3:5.

We answer this question "yes." We further explain that the employee is entitled to one and one-half times the minimum wage times the number of hours the employee works on Sunday.

> "The court also welcomes the advice of the Supreme Judicial Court on any other questions of Massachusetts law it deems material to the present action."

Any additional guidance is provided in the course of answering the two questions presented.

1. Facts. We take the following facts from the parties' stipulated facts and other uncontested material in the record. The plaintiff employees worked as salespeople at retail stores operated by the defendant employers between 2014 and 2016. The parties have stipulated that the employees were paid on a "[one hundred percent] commission" basis: their wages took the form of a recoverable draw of $125 per day, and any sales commissions in excess of the draw.[7] In other words, as their daily pay the employees received the greater of (1) the $125 recoverable draw or (2) earned commissions in excess of $125. On at least one occasion, the employees worked more than forty hours in a week, and they also worked on at least one Sunday. On these

---

[7] Although the parties stipulated that the employees worked on a "[one hundred percent] commission" basis, they were not paid on a "commission-only" plan, in which a "salesperson's entire income is derived through commissions." Snyder, Compensation and Benefits, supra at § 3:4. Rather, they were paid on a "commission-plus-draw" plan involving a "recoverable draw," which is an advance that the employee must pay back once he or she has earned sufficient commission. Id. at § 3:5.

occasions, the employers did not pay the employees any additional compensation beyond the recoverable daily draw and any commissions.  The amount of compensation the employees received, however, always equaled or exceeded the minimum wage times the number of hours they worked up to forty hours, plus one and one-half times the number of hours they worked over forty hours or on Sunday.

In September 2017, the employees brought suit in the Superior Court, alleging that the employers' payment policies violated G. L. c. 149, § 148 (Wage Act), as well as the overtime and Sunday pay statutes.  The employers argued as affirmative defenses that the employees had received all compensation to which they were entitled and specifically that their claims were offset by other compensation that they had received.  The employers removed the case to Federal court based on the diversity of citizenship of the parties.

2.  Discussion.  a.  Relevant statutes and regulations.  We begin with the text of the relevant statutes.  With exceptions not relevant here, G. L. c. 151, § 1A, the overtime statute, provides:

> "[N]o employer in the commonwealth shall employ any of his employees in an occupation . . . for a work week longer than forty hours, unless such employee receives compensation for his employment in excess of forty hours at a rate not less than one and one half times the regular rate at which he is employed.  Sums paid as commissions, drawing accounts, bonuses, or other incentive pay based on

sales or production, shall be excluded in computing the regular rate and the overtime rate of compensation under the provisions of this section."

The overtime statute further provides that "[i]n any work week in which an employee of a retail business is employed on a Sunday or certain holidays at a rate of one and one-half times the regular rate of compensation at which he is employed as provided in [G. L. c.] 136, the hours so worked on Sunday or certain holidays shall be excluded from the calculation of overtime pay as required by this section, unless a collectively bargained labor agreement provides otherwise."  Additionally, G. L. c. 136, § 6 (50), the Sunday pay statute, provides that "[a]ny store or shop . . . which employs more than a total of seven persons, including the proprietor, on Sunday or any day throughout the week, shall compensate all employees engaged in the work performed on Sunday . . . at a rate not less than one and one-half times the employee's regular rate."

"Regular rate" is not defined in the overtime statute, but 454 Code Mass. Regs. § 27.02 (2015), a regulation issued by the Department of Labor Standards (department),[8] offers the following definition of an employee's "regular hourly rate":

---

[8] This regulation was promulgated by the Department of Labor Standards (department) "[t]o clarify practices and policies in the administration and enforcement of [G. L. c. 151]" and "applies to any employer who employs any person in an occupation

"Regular Hourly Rate.  The amount that an employee is regularly paid for each hour of work.  When an employee is paid on a piece work basis, salary, or any basis other than an hourly rate, the regularly hourly rate shall be determined by dividing the employee's total weekly earnings by the total hours worked during the week.  Regardless of the basis used, an employee shall be paid not less than the applicable minimum wage each week.[9]

"The regular hourly rate shall include all remuneration for employment paid to, or on behalf of, the employee, but shall not include:

"(a) sums paid as commissions, drawing accounts, bonuses, or other incentive pay based on sales or production; or (b) sums excluded under 29 U.S.C. § 207(e)."

Title 454 Code Mass. Regs. § 27.03(3) (2015) further

provides:

"Overtime Rate.  One and one half times an employee's regular hourly rate, such regular hourly rate not to be less than the basic minimum wage, for work in excess of [forty] hours in a work week, except as set forth in [G. L.] c. 151, § 1A. . . .  Whether a nonexempt employee is paid on an hourly, piece work, salary, or any other basis, such payments shall not serve to compensate the employee for any portion of the overtime rate for hours worked over [forty] in a work week, except that this limitation only applies to the 'one-half' portion of the overtime rate (one and 'one-half' times an employee's regular hourly rate) when overtime is determined on a bona fide fluctuating workweek basis."[10]

---

in accordance with" that statute.  454 Code Mass. Regs. § 27.01 (2015).

[9] The previous version of this sentence stated:  "Regardless of the basis used, whether time rate, commission basis or piece rate, an employee shall be paid not less than the applicable minimum wage each week."  455 Code Mass. Regs. § 2.01 (2003).

[10] "[T]he so-called 'fluctuating work week' method of calculating overtime," as we explained in Goodrow v. Lane Bryant, Inc., 432 Mass. 165, 176 (2000), refers to "salaried

Finally, two opinion letters[11] issued by the department specifically considered the applicability of the overtime statute to one hundred percent commission employees.[12]  In a March 14, 2003 opinion letter (2003 letter), the department concluded that an "inside sales employee who is paid on a [one hundred] percent commission basis" is "subject to the state overtime law."[13]  The 2003 letter, relying on 455 Code Mass.

_____

employees whose hourly work week varies, and who have an understanding with their employers that their fixed salary constitutes straight-time pay for whatever hours they are called on to work in a work week."  This method is not at issue in this case.

[11] An opinion letter interpreting a statute or regulation "does not have the binding force attributable to a full-blown regulation."  Massachusetts Gen. Hosp. v. Rate Setting Comm'n, 371 Mass. 705, 707 (1977).  We will generally defer, however, to an agency's interpretation contained in an opinion letter if it is not contradicted by the text or purpose of the underlying statute.  See Swift v. AutoZone, Inc., 441 Mass. 443, 450 (2004) (explaining, with respect to department opinion letter, that "[i]n general, we grant substantial deference to an interpretation of a statute by the administrative agency charged with its administration," unless that interpretation is "contrary to plain language of the statute and its underlying purpose" [citations omitted]).  See also Niles v. Huntington Controls, Inc., 92 Mass. App. Ct. 15, 22 (2017) (judge erred in failing to give deference to department opinion letters).

[12] As explained in note 7, supra, the parties in this case stipulated that the payment method used by the employers resulted in the employees being paid on a one hundred percent commission basis.

[13] The March 14, 2003 opinion letter is available at https://www.mass.gov/files/documents/2017/10/26/MW%20Opinion%2003-14-03.pdf [https://perma.cc/WQ6S-DYM6].

Regs. § 2.01 (2003), further explained that "Massachusetts law requires that [a one hundred percent commission] employee be paid at least the equivalent of minimum wage for the first [forty] hours, and time and one-half minimum wage for all hours worked over [forty] in a given workweek." A December 21, 2009 opinion letter (2009 letter) reiterated that "inside salespersons are subject to the state overtime law" and must "be paid at least the equivalent of minimum wage . . . for the first [forty] hours, and time and one-half minimum wage . . . for all hours worked over [forty] in a given workweek."[14] The 2009 letter also included an example: "If an employee paid on a [one hundred] percent commissions basis works [fifty] hours in a given work week, the employee's total compensation for that week must equal or exceed $450.00 ($320.00 [$8 x 40 hours] + $120.00 [$12 x 10 hours]) [sic]." Neither letter addressed whether these calculations were required to be broken down and included in the wage statements, or otherwise explained to the employees, or whether a lump sum equaling or exceeding these amounts was sufficient.

    b. <u>Entitlement to overtime compensation</u>. i. <u>Whether draws and commissions may be credited against overtime wages</u>.

---

[14] The December 21, 2009 opinion letter is available at https://www.mass.gov/files/documents/2017/10/06/12-21-09%20MW%20opinion.pdf [https://perma.cc/W8C3-YEPX].

To answer the first certified question, we consider whether an employer may retroactively allocate draws and commissions as hourly wages and overtime pay in order to comply with the premium pay requirements of the overtime statute. The employees argue that, under the overtime statute and applicable regulations, such crediting is not allowed and that they are entitled to separate and additional overtime pay beyond their draws and commissions. The employers do not dispute that one hundred percent commission employees are subject to the overtime statute. They ask us to conclude, however, that they satisfied this requirement by providing draws and commissions that equaled or exceeded one times the minimum wage times the number of hours worked up to forty, plus one and one-half times the minimum wage for any hours worked beyond forty. They rely in particular on the two opinion letters and the calculations they contain. We recognize that the opinion letters are less than a model of clarity and may have misled the employers. We nonetheless agree with the employees that such retroactive allocation and crediting is impermissible and that separate and additional overtime is owed. We reach this conclusion based on the language and purposes of the overtime statute, the regulatory guidance, and our previous case law establishing that, in most circumstances, employers may not retroactively reallocate and

credit payments made to fulfill one set of wage obligations against separate and independent obligations.

The purposes of the overtime requirement, as we explained in Mullally v. Waste Mgt. of Mass., Inc., 452 Mass. 526, 531 (2008), are "to reduce the number of hours of work, encourage the employment of more persons, and compensate employees for the burden of a long workweek."  In Mullally, supra at 529, an employer used a payroll formula founded on a fluctuating "base pay rate" that reflected the number of overtime hours an employee actually worked.[15]  Nonetheless, the employee would receive "approximately the same hourly wage regardless [of] whether [he or she] work[ed] overtime."  Id. at 532.  We concluded that, because the employee was paid at the same hourly rate "regardless of whether the employee worked forty or fifty hours," this payroll system undermined the three purposes of the overtime statute.  Id. at 531-532.  Specifically, the employer lacked "the economic disincentive intended by [the overtime statute]," was not encouraged "to hire additional employees,"

---

[15] The employer in Mullally v. Waste Mgt. of Mass., Inc., 452 Mass. 526, 528 (2008) was required by G. L. c. 149, § 27F, to compensate its employees at the "prevailing wage rate."  The base rate was set at less than the prevailing wage rate, but the employer averaged the employees' overtime and nonovertime hours so that the average hourly rate exceeded the prevailing wage rate.  Id. at 529 & n.7.  If the average hourly rate fell below the prevailing wage rate in a given week, the employer would provide a "buffer check" to make up the difference.  Id. at 529-530.

and did "not compensate employees for longer work weeks." Id. at 532.

We relied on Mullally in deciding Somers v. Converged Access, Inc., 454 Mass. 582, 589 (2009), which involved a plaintiff who claimed his employer had misclassified him as an independent contractor, when in fact he was an employee who "f[e]ll within the protection of . . . G. L. c. 151, § 1A." A judge dismissed the plaintiff's claim "because [the employer] had presented unrefuted evidence that [the employee] had been paid more as an independent contractor than he would have been paid in wages and benefits had he been hired as an employee." Id. at 583. We reversed, explaining that employers "may not . . . reduce their obligation to make overtime payments based on the argument that, had they known they were obliged to pay overtime, they would have paid the employee a lower wage for the first forty hours worked in a week." Id. at 594. We specifically stated that "[t]his argument is analogous to (and as unpersuasive as)" the employer's argument in Mullally that, "despite the clear mandate of G. L. c. 151, § 1A, it should not be obliged to pay its employees one and one-half times the regular rate for overtime work, because, had it realized that it had this obligation, it would have paid its employees a lower base wage." Id. at 591, citing Mullally, 452 Mass. at 531-532.

We elaborated on the reasons why employers may not retroactively reallocate or "credit" payments in the context of a Wage Act claim in Dixon v. Malden, 464 Mass. 446 (2013). That case involved a plaintiff who brought suit against his municipal employer under the Wage Act for failing to pay him his accrued vacation days at the time of his termination. Id. at 448. The employer had made "undifferentiated gratuitous weekly payments" following the employee's termination that exceeded the amount owed for the unpaid vacation time, leading the judge to dismiss on the theory that the plaintiff ultimately received more money than he was owed. Id. at 446-449. As in Somers, we reversed, holding that the "city's payment of salary and benefits after the plaintiff's termination . . . does not provide a substitute for payment for accrued vacation time." Id. at 451. In support of this conclusion, we explained that the "city did not characterize the continued salary payments as payment for vacation accrual, and the city did not communicate in any way that the salary continuation was payment for accrued vacation time. . . . Gratuitous salary payments, and the benefits associated with salary payments, do not constitute payment for earned and accrued vacation time." Id. at 451-452.

The Mullally, Somers, and Dixon decisions all demonstrate that the overtime statute requires separate and additional overtime compensation to be provided to a one hundred percent

commission employee regardless of whether that employee receives a recoverable draw or commissions that equal or exceed one and one-half times the minimum wage for any hours worked beyond forty.[16]  As the court in Mullally, 452 Mass. at 531, emphasized, an employer must respect the purposes of the overtime law, and thus pay "time and a half" for overtime, because such payments are necessary to "reduce the number of hours of work, encourage the employment of more persons, and compensate employees for the burden of a long workweek" in conformity with the purposes of the overtime statute.  In the instant case, the $125 daily recoverable draw likewise functions as a flat rate payment that does not change based on whether an employee works overtime. Here, as in Mullally, the employees are not compensated at a premium rate for additional hours worked over forty, while the employers have an incentive to have the employees work more than forty hours in a week and conversely lack an incentive to hire

---

[16] As discussed infra, G. L. c. 151, § 1A (overtime statute), and G. L. c. 136, § 6 (50) (Sunday pay statute), "require an employer to do the same thing," and therefore an employer is not required to make separate and independent overtime and Sunday payments.  Swift, 441 Mass. at 446.  Unless otherwise indicated, we conclude that the "time-and-a-half" premium pay provision of the Sunday pay statute has a similar purpose of creating an "economic disincentive" for employers and providing additional compensation to employees with respect to work done on Sunday.  Mullally, 452 Mass. at 532.  See Ciardi v. F. Hoffmann-La Roche, Ltd., 436 Mass. 53, 62 (2002) ("Statutes addressing the same subject matter clearly are to be construed harmoniously so as to . . . give rise to a consistent body of law").

additional employees.  The employers' payment scheme thus contravenes the purposes of the overtime statute and is not permissible absent separate and additional overtime payments.

This analysis is not altered by the fact that the payments that the employees received always equaled or exceeded one and one-half times the minimum wage for all overtime hours worked. The Somers and Dixon decisions likewise involved employees who received more money than they otherwise would have received had their wage payments been properly classified in the first place. In Somers, 454 Mass. at 592, we nonetheless explained that the Wage Act does not contain a "safe harbor" for such payments on the grounds that employers would just otherwise lower hourly payments.  And as we confirmed in Dixon, 464 Mass. at 452, employers may not retroactively allocate payments made for one purpose to a different purpose.  If employers could undertake such retroactive reallocation of payments, they would similarly lack an incentive to comply with the wage and overtime statutes in the first place.  The Dixon decision also makes clear the importance of an upfront communication of the breakdown of the amounts to the employees.

We further agree with the employees that 454 Code Mass. Regs. § 27.03 should be read to prohibit retroactive "crediting" of payments against an employer's overtime obligations when those payments were made for a different purpose.  That

regulation provides that "[w]hether a nonexempt employee is paid on an hourly, piece work, salary, or any other basis, such payments shall not serve to compensate the employee for any portion of the overtime rate for hours worked over [forty] in a work week." We interpret this regulation according to the "plain and ordinary meaning" of its words. Ingalls v. Board of Registration in Med., 445 Mass. 291, 294 (2005). Here, the plain language of the regulation prohibits crediting payments made on "any . . . basis" against an employer's overtime obligations.[17] Although a regulation must be invalidated if it "is contrary to the plain language of the statute and its underlying purpose," the regulation is thus consistent with the case law discussed above. Duarte v. Commissioner of Revenue, 451 Mass. 399, 408 (2008). In short, the regulation entitles the employees to separate and additional overtime payments beyond their draws and commissions.[18]

---

[17] Admittedly, some confusion is introduced by the reference to a "portion of the overtime rate" as opposed to a "portion of the employee's wages paid at the overtime rate." But as discussed, the phrase "regular hourly rate" in the regulation is simply being used as a variable in a formula for calculating the hourly overtime rate of pay. There is no indication that, because commissions and drawing accounts are excluded from the calculation of this variable, the Legislature intended to allow employers to credit commissions against overtime obligations.

[18] The employers claim that this interpretation of 454 Code Mass. Regs. § 27.03 (2015) conflicts with the department's March 14, 2003 and December 21, 2009 opinion letters and that the

For the foregoing reasons, we answer "yes" to the question "[i]f a [one hundred percent] commission inside sales employee works more than forty hours in a given work week, is the employee entitled to any additional compensation specifically for overtime hours worked when the employee's total compensation (through draws and commissions) for that workweek is equal to or greater than 1.5 times the employee's regular rate or at least 1.5 times the minimum wage for all hours worked over [forty] hours in a workweek?"

---

department interpreted the overtime statute such that separate and additional overtime compensation is not due to one hundred percent commission employees.  Specifically, the 2003 letter concluded that "compensation paid as a recoverable draw may reduce future commissions provided the employee always receives at least minimum wage for all hours worked and overtime compensation" and gave two hypothetical "recoverable draw pay arrangements" involving employees who work fifty hours per week and receive recoverable draws that equal or exceed the minimum wage for the first forty hours and the overtime rate of one and one-half times the minimum wage for the remaining ten hours.

As discussed in note 11, supra, we will disregard agency guidance such as an opinion letter if it is contradicted by the text or purpose of the underlying statute.  If the employers' interpretation were correct, that interpretation would conflict with the purpose of the overtime statute discussed supra.  Here, however, there is confusion but no direct conflict.  The 2003 letter presumed that a one hundred percent commission employee paid with a recoverable draw receives "at least minimum wage for all hours worked and overtime compensation" (emphasis added).  In other words, the department correctly identified minimum wage and overtime pay as separate and independent obligations, even though the former sometimes may be used as a variable in calculating the latter.  What is left unclear by the opinion letters is whether this can all be allocated retroactively.  We conclude it cannot.

ii. Employees' regular rate for purposes of calculating overtime pay. The Federal District Court also certified the question: "If additional compensation is due, what is the employee's regular rate for purposes of calculating overtime pay?" We have explained that the term "regular rate" is the "hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed" (citation omitted). Goodrow v. Lane Bryant, Inc., 432 Mass. 165, 175 (2000). The overtime statute states, however, that "[s]ums paid as commissions" or "drawing accounts . . . shall be excluded in computing the regular rate" at which an employee is compensated.[19] Title 454 Code Mass. Regs. § 27.02 provides that "[r]egardless of the basis used, an employee shall be paid not less than the applicable minimum wage each week." Furthermore, as the department explained in its 2003 and 2009 opinion letters, one hundred percent commission employees must receive overtime pay at a rate of no less than one and one-half times the minimum wage.[20] We generally defer to an agency's

---

[19] Title 454 Code Mass. Regs. § 27.02 (2015), tracking the language of G. L. c. 151, § 1A, also states that the employee's "regular hourly rate" excludes "sums paid as commissions, drawing accounts, bonuses, or other incentive pay based on sales or production."

[20] As the department explained in its 2009 letter, "in computing the overtime rate for an employee who is paid on a [one hundred] percent commission basis, the employee's total

interpretation of a statute it administers unless this interpretation is contradicted by the text or purpose of the underlying statute. See Swift v. AutoZone, Inc., 441 Mass. 443, 450 (2004). We agree that the agency's interpretation here is reasonable. In response to the question, "[W]hat is the employee's regular rate for purposes of calculating overtime pay?" we thus answer, "at least the equivalent of minimum wage." The overtime rate is thus one and one-half times the minimum wage for one hundred percent commission employees.

c. Entitlement to Sunday pay. For similar reasons to those set forth supra, we conclude that the employees are entitled to separate and additional Sunday pay even though the employer paid them a recoverable draw that equaled or exceeded one times the minimum wage times the number of hours they worked up to forty hours plus one and one-half times the minimum wage for hours worked on Sunday. The Sunday pay statute "require[s] an employer to do the same thing" as the overtime statute,

---

earnings for purposes of overtime calculation must exclude commissions. However, pursuant to 455 [Code Mass. Regs. §] 2.03(3), the employee's regular hourly rate must not be less than the minimum wage. These two provisions must be read harmoniously to effectuate a consistent body of law. . . . A plain reading of the two provisions compels the conclusion that such an employee be paid at least the equivalent of minimum wage . . . for the first [forty] hours, and time and one-half minimum wage . . . for all hours worked over [forty] in a given workweek."

namely to provide pay at "not less than one and one-half times the employee's regular rate" for hours worked on a Sunday. Swift, 441 Mass. at 446, quoting G. L. c. 136, § 6 (50). Furthermore, as we held in Swift, supra at 445-446, these statutes are sufficiently similar that an employer may "credit[] Sunday premium rate payments toward overtime payments" because "an employer who credits premium rate payments for Sunday hours against overtime wages in fact satisfies the express language of both statutes." "Statutes addressing the same subject matter clearly are to be construed harmoniously so as to give full effect to all of their provisions and give rise to a consistent body of law." Ciardi v. F. Hoffmann-La Roche, Ltd., 436 Mass. 53, 62 (2002). We thus ascribe similar purposes to the premium pay provision of the Sunday pay law. See note 16, supra. Accordingly, we provide the same answers to the second certified question as we provided to the first one.

3. Conclusion. We answer the certified questions in the affirmative, with overtime or Sunday pay for a one hundred percent commission employee to be calculated at one and one-half times the minimum wage. The Reporter of Decisions is to furnish attested copies of this opinion to the clerk of this court. The clerk in turn will transmit one copy, under the seal of the court, to the clerk of the United States District Court for the

District of Massachusetts, as the answer to the questions certified, and will also transmit a copy to each party.